### BRICTSON MFG. CO. v. CLOSE et al. *

(Circuit Court of Appeals, Eighth Circuit. April 5, 1922.)

No. 5944.

1. Corporations ⚫═308(4)—Agreement to pay salary as part consideration for license under patent is binding.

An agreement by a corporation to pay a stipulated salary to its president and general manager for his services, made as part consideration for the transfer to it of the president's manufacturing business and the license to use his patent, is valid and binding, especially where the stockholders who objected thereto became such after the contract was made and was part of the records of the corporation.

2. Corporations ⚫═609—Court of equity has no jurisdiction to dissolve solvent corporation managed without fraud.

A court of equity, which has expressly found that the managing officer of a corporation was not guilty of dishonest or fraudulent conduct, and did not contemplate doing anything he was not legally entitled to do, and also found that the corporation was solvent, had no jurisdiction to dissolve the corporation and to wind up its affairs.

3. Corporations ⚫═393—Courts cannot meddle in business affairs.

A court of equity is without power to intermeddle with the business affairs of the corporation, which includes the determination whether to carry out the purpose to construct a new factory for which stock had been issued and sold, and whether the patents it had a license to use granted any right of value, or its business justified continuation, in view of the large salary it had agreed to pay its president.

4. Receivers ⚫═36—Appointment is ancillary remedy.

The appointment of a receiver is an ancillary remedy to preserve the corpus pending judicial determination of the rights of the litigants, and cannot be granted, where the bill prayed for no ultimate relief which the court could grant, and the facts did not call for any relief to complainants.

5. Receivers ⚫═6—Should not be appointed, if there is other relief not so severe.

The appointment of a receiver is a drastic remedy, and is never granted, if there be other relief not so severe.

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Suit in equity by H. E. Close and others against the Brictson Manufacturing Company. From an order appointing a receiver for defendant corporation, defendant appeals. Reversed, with directions to dismiss the bill.

· M. E. Culhane, of Brookings, S. D., and William M. Giller, of Omaha, Neb. (Weaver & Giller, of Omaha, Neb., on the brief), for appellant.

Francis A. Mulfinger, of Omaha, Neb. (Robert J. Webb, of Omaha, Neb., and Lawrence W. Rice, of Valentine, Neb., on the brief), for appellees.

---

⚫═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Rehearing denied July 7, 1922.

Before SANBORN and LEWIS, Circuit Judges, and VAN VAL-KENBURGH, District Judge.

LEWIS, Circuit Judge. Prior to November, 1916, O. A. Brictson had been manufacturing and selling at Brookings, South Dakota, improved automobile tires. His improvement, for which he had obtained U. S. Letters Patent in 1910, consisted, generally, of rows of metallic rivets through the tire, arranged in staggered relation and having their outer or exposed ends enlarged and flattened, the purpose being, as shown in the specification, to protect the outer surface of the tire. In the month named he and others who joined with him organized, under South Dakota laws, the appellant corporation, which immediately took over all of his interest and all of the assets of that business, including rights under the patent, as his licensee. The authorized capital of the company was $5,000,000, divided into 50,000 shares, of which 40,000 were common and the remainder preferred stock, of which Brictson, in consideration of the transfer to the company, received all of the common stock and 1,000 shares of the preferred stock, but at once donated back to the company 8,000 of the common and 250 of the preferred. In further consideration of the transfer he was permanently employed to manage the company's business at a salary of not less than $7,500 for the first year and not less than $10,000 per year thereafter. All of this is shown by contract entered into between him and the company, and by the minutes of its board of directors held in January following. The board at that meeting authorized the sale of 5,000 shares of the preferred, giving therewith as a bonus a certain number of shares of the common which had been donated by Brictson. The company then submitted to the proper State authorities in South Dakota, Iowa and Nebraska its proposed plan of disposing of its stock under the requirement of what is called the Blue Sky Law, and the plan was approved. A written form of subscription for shares was made out in which it was stated that 20 per cent. received for the stock would be allowed as commission to the selling agent, and the appellees made their subscriptions on those forms. · Later it was decided to change the place of manufacture from Brookings to Omaha, Nebraska, and ground at the latter place was purchased for that purpose and the company's offices were moved to Omaha.

In August, 1921, the appellees, eight in number, filed their bill in this case as stockholders. All but two of them had five shares each of the preferred stock, the other two ten each. They alleged that the preferred stock was sold for the purpose of establishing a factory at Omaha, that $28,000 of the company's money had been invested in a site for that purpose but that the factory had not been built, that the company was still carrying on a small business at Brookings, that the small plant at Brookings was not worth more than $8,000, that O. A. Brictson had represented that his patent rights were worth $1,000,000 and had received in consideration therefor all of appellant's common stock, but that in fact said patent rights were not valuable, that four years have passed since a site for the new factory was purchased at Omaha, that Brictson's salary of $10,000 a year is exorbitant, that more

than $300,000 has been received from the sales of preferred shares, that dividends have been paid on the preferred shares out of the money for which they were sold, that a majority of the directors have sold out and resigned, and that Brictson is in charge of the company's business and of all of its assets, that no meeting of stockholders or of the board of directors had been held in 1921, that on account of these facts the purposes for which the appellant was incorporated have failed and are impossible of being carried out, and that the only object in continuing the company is to enable Brictson to draw a large salary and remain in control of the company's affairs. It was alleged that the appointment of a receiver was necessary to preserve the company's assets, prevent waste and reckless extravagance, and to administer the company's affairs in an honest, business-like and impartial manner, until such time as the stockholders may determine and assert their real wishes as to whether the company should be liquidated or whether it should be continued under efficient management or reorganized, or some other steps taken by the stockholders upon which they might ultimately decide. There were intimations that Brictson might dispose of or hypothecate the company's assets, and also that he might be guilty of some fraudulent conduct to the detriment of the company, but there was no direct allegation to that effect, nor that any such things had ever been done by him. It was not alleged that the company was insolvent. The answer denied all intimations of fraudulent conduct on the part of Brictson, alleged that he was and had been drawing the salary fixed in a contract between him and the company, that the company was solvent, that it was carrying on its business at a profit, that the patent rights which he transferred to the company were of great value, that all dividends had been paid out of net profits, that its assets in the hands of Brictson were being carefully preserved and that there was no occasion or necessity for the appointment of a receiver, and prayed that the bill be dismissed.

The record is voluminous, and was made up in violation of Equity Rule 75b, with no apparent excuse therefor. Its more than 500 pages ought to have been condensed into less than a third that much. The court heard the parties at length, granted the prayer of the bill and appointed a receiver; and from that action the company brings this appeal. Judicial Code, § 129 (Comp. St. § 1121).

The record discloses beyond question that at the time the receiver was appointed the company had in bank more than $15,000, that its accounts receivable were that much or more, that it held solvent bills receivable for more than $60,000, that it had more than $60,000 face value in United States bonds and War Savings stamps, that the real estate which it had purchased at Omaha for its factory site was worth more than $37,000, that it had other property, real and personal, worth several thousand more, and that its liabilities did not exceed $5,000. Brictson is the company's President and Treasurer. Dividends may have been declared and paid on the preferred stock when it was unwise to do so; but it was not shown that they were taken from receipts of stock sales, otherwise than as that fact might or might not be deduced in the matter of bookkeeping. There is room for some contro-

versy on the inquiry whether those receipts are represented in full in the assets, and also whether some part of those receipts were not used for current expenses.

[1] For obvious reasons the court did not undertake to pass on the question as to whether the company was bound by its contract and obligated to pay Brictson the salary he was drawing. He is not a party to this suit. The agreement between him and the company that he should be paid the stipulated salary was a part of the consideration for which he transferred to it the manufacturing plant at Brookings, all of the property in connection therewith, the good-will of the business that he had been theretofore conducting, and the right to make the tire as his licensee under his patent. Brictson has fully performed that contract on his side, and we are not advised of any principle in law or equity that will relieve the company from its obligations under it, and we find nothing in the record that causes us to doubt that it is a valid and binding obligation between those who made it. Moreover, it was fully disclosed on the company's records, and the appellees did not become interested in the company as stockholders until after the contract was made. It was not concealed from them, and they are not in a position to attack it on any ground.

[2] The trial court, in passing on the facts, expressly exonerated Brictson from dishonest or fraudulent conduct, and from all intimations that he contemplated doing anything as an officer of the company that he was not lawfully entitled to do. It found that he had carefully looked after and preserved the company's assets which came into his hands. No other finding could have been made on the facts. The court did not have jurisdiction to dissolve the corporation and wind up its affairs. Cook on Corp. (4th Ed.) § 629; Conklin v. U. S. Shipbuilding Co. (C. C.) 140 Fed. 219; Arents v. Tobacco Co. (C. C.) 101 Fed. 338, 344; Maguire v. Mortgage Co., 203 Fed. 858, 122 C. C. A. 83.

[3] Laying out of consideration the foregoing, as must be done, there is nothing left in the bill except complaints concerning the proper management of the company's affairs, by eight dissatisfied stockholders who have, in the aggregate, fifty shares. But a court is without power to intermeddle with the business affairs of a corporation. This court declared in Republican Mountain Silver Mines Co. v. Brown, 58 Fed. 644, 7 C. C. A. 412, 24 L. R. A. 776:

"A court of equity has no power to interpose its authority for the purpose of adjusting controversies that have arisen among the shareholders or directors of a corporation relative to the proper mode of conducting the corporate business."

And Cook, in section 684, says that "the discretion of the directors or a majority of the stockholders as to acts intra vires cannot be questioned by single stockholders unless fraud is involved," is a principle clearly, firmly and very properly established beyond any question. Undoubtedly, the removal of the factory to Omaha and the time for construction of proper buildings for that purpose was a question wholly intra vires, to be controlled by the stockholders and the board of directors, each speaking on appropriate occasion under the charter and

by-laws, and there was no showing that the officers were directed to proceed in that matter after the site was purchased, or at any time; on the contrary, there was testimony that that had not yet been done because of present extremely high cost of erecting the proper structure. But in any event, as already said, those are matters not for the consideration of a court, but must rest with the corporation.

[4, 5] Again, an application for a receiver is an ancillary remedy, brought with the purpose of incidentally aiding in the procurement of other ultimate relief. It seeks to preserve the corpus pending judicial determination of the rights of the litigants, which must be appropriately sought in the pending cause. It is recognized by all the authorities that the appointment of a receiver is a drastic remedy, and is never granted if there be other relief not so severe. 1 Morawetz on Private Corporations (2d Ed.) § 281; Sidway v. Land & Live Stock Co. (C. C.) 101 Fed. 481; Price v. Bankers' Trust Co. (Mo. Sup.) 178 S. W. 745. But no ultimate relief was prayed for in the bill which the court could grant, nor would the facts call for or support any ultimate relief to complainants. The court, in ruling on the facts, seemed to doubt that the patent called for a useful improvement, and expressed the opinion that it only embodied a novelty in tire construction; but the court had no right to decide that the company could not make and sell a novelty, if that were within its charter powers and it chose to do so. It then concluded that a receiver should be appointed because the business that the company was then conducting was small, and that Brictson's salary was so large that if something were not done by the court the assets would be consumed in the payment of his salary. As already said, the matters thus complained of and considered were within corporate action only. We are clearly of opinion that there was no basis, either in pleadings or facts, upon which a receivership can be rested, and that there was an abuse of discretion in granting it; and following the rule announced in Smith v. Vulcan Iron Works, 165 U. S. 518, 17 Sup. Ct. 407, 41 L. Ed. 810, the order will be reversed, with directions that the receiver be required to return all property in his hands to those from whom he received it, that he be thereupon discharged, and that the bill be dismissed at complainants' costs. '