## BRICTSON MFG. CO. v. CLOSE et al.
### (three cases).

Circuit Court of Appeals, Eighth Circuit.
April 2, 1928.

Nos. 7932–7934.

1. **Judgment** ☞828(3)—**Judgment of state court of competent jurisdiction is conclusive on parties in federal court.**

Judgment rendered by state court of competent jurisdiction is binding on the parties, when made the basis of a claim or defense in any court of United States, whether questions put in issue were federal, general, or local.

2. **Judgment** ☞828(3)—**Judgment of state court ousting corporation held binding on corporation as against collateral attack on judgment in federal court (Comp. St. Neb. 1922, §§ 9280–9307; Const. U. S. art. 1, § 8, and Amend. 14).**

Judgment of state court in quo warranto proceedings, by which corporation was ousted from doing business in state and property put in charge of trustees, under Comp. St. Neb. 1922, §§ 9280–9307, held, binding on corporation as against collateral attack in federal court on subsequent report of receiver, where it was conceded that the state court had jurisdiction of subject-matter and parties, and where it did not appear on face of the record that the judgment violated Const. U. S. art. 1, § 8, and Amend. 14, since judgment of state court of competent jurisdiction is binding on parties in suit in United States court.

3. **Constitutional law** ☞303—**Corporations** ☞637—**Construction of law permitting ouster of corporations held not unconstitutional, as accomplishing forbidden result, where collusion between Attorney General and stockholders was insufficiently shown (Comp. St. Neb. 1922, §§ 9280–9307; Const. U. S. Amend. 14).**

Construction of Comp. St. Neb. 1922, §§ 9280–9307, by ousting corporation from state in quo warranto proceedings by Attorney General and ordering property turned over to trustees, held, not to violate Const. U. S. Amend. 14, as use of scheme to accomplish forbidden result, where Attorney General's pleadings showed his belief that the corporation was guilty of fraud and had no substantial assets, and similarity between allegations in petition of stockholders for appointment of receiver and of Attorney General in quo warranto proceeding did not show collusive agreement with stockholders.

4. **Commerce** ☞48—**Ouster by Nebraska court of manufacturing corporation organized under South Dakota laws, but operating in Nebraska, held not to interfere with interstate commerce (Comp. St. Neb. 1922, §§ 9280–9307; Const. U. S. art. 1, § 8, subd. 3).**

Where manufacturing corporation, organized under laws of South Dakota, had its principal place of business in Nebraska and conducted its operations there, judgment of ouster in quo warranto proceedings in Nebraska state court, under Comp. St. Neb. 1922, §§ 9280–9307, held, not to violate Const. U. S. art. 1, § 8, subd. 3, giving Congress power to regulate commerce among the several states.

5. **Courts** ☞500—**Federal court's possession of corporation's property held not to prevent ouster proceedings in state court (Comp. St. Neb. 1922, §§ 9280–9307).**

Fact that property of corporation was in hands of receiver appointed by federal court held, not to prevent Attorney General's institution of quo warranto proceedings, under Comp. St. Neb. 1922, §§ 9280–9307, to oust corporation from state.

6. **Courts** ☞500—**Restraining order issued by state court was ineffectual as to property in possession of corporate receiver appointed by federal court (Comp. St. Neb. 1922, §§ 9280–9307).**

Restraining order issued by state court in quo warranto proceedings to oust corporation, under Comp. St. Neb. 1922, §§ 9280–9307, was ineffectual to disturb property of corporation in possession of receiver appointed by federal court until after it left receiver's hands.

7. **Courts** ☞500—**Judgment of state court ousting corporation held to prevent enforcement of federal court mandate as to local property in receiver's hands, required by mandate to be returned to corporation (Comp. St. Neb. 1922, §§ 9280–9307).**

Where, pending trial court's delay in compliance with mandate of Circuit Court of Appeals directing return of property in receiver's hands to corporation, quo warranto proceedings were instituted in state court, by which corporation was ousted, under Comp. St. Neb. 1922, §§ 9280–9307, changed condition of affairs prevented enforcement of mandate as to property in state, and required that such property be turned over to trustees of corporation appointed by state court.

8. **Corporations** ☞560(4)—**Court, having appointed receiver, has right and duty to protect receiver's possession.**

Where receiver has been appointed, property of corporation is in custodia legis, and court has right and duty to protect the receiver's possession, even though court had no jurisdiction to appoint the receiver.

9. **Corporations** ☞560(4)—**Tax deed to corporation's property under sale for taxes after appointment of receiver held void.**

Tax deed to corporation's property, under sale had after appointment of receiver, held

void, irrespective of court's jurisdiction in receivership proceedings.

**10. Receivers ☞73—Court has power to protect property in custody of receiver without necessity of other grounds for equitable relief.**

Court has power to protect property in the custody of a receiver without allegation of further grounds for exercising jurisdiction.

**11. Taxation ☞832, 834—Purchaser of corporation's property at tax sale after appointment of receiver held entitled to reimbursement for taxes paid and for improvements as condition to cancellation of tax deed (Comp. St. Neb. 1922, §§ 5665–5675).**

On report of receiver of corporation's property, tax deed granted under tax sale subsequent to time of receiver's appointment, though void, was canceled only on condition that grantee under tax deed and in possession be reimbursed for amount of taxes paid and for any permanent or beneficial improvements made on the land, regardless of Comp. St. Neb. 1922, §§ 5665–5675.

**12. Taxation ☞834—Recovery for improvements of one holding under void tax deed was enhanced value of land.**

Compensation to be paid holder of void tax deed to corporation's property for permanent beneficial improvements made on land was measured, not by the cost of the improvements, nor by their value apart from the land, but by the enhanced value of the land resulting from the improvements.

**13. Evidence ☞318(1)—Inventory prepared by one man's calling estimate of goods to another, who made report, held mere hearsay, where unsupported by persons who examined goods.**

Inventory of stock of goods, made by one man examining the goods and calling off his conclusions to another person, who recorded them, *held,* mere hearsay, in absence of testimony as to the goods which were listed by some one who saw them, and testimony of person merely taking down the report of the goods was insufficient to make the inventory admissible.

**14. Corporations ☞687—Receiver of corporation held not liable for conversion of property located in another state, where evidence failed to show value and corporation retained right of control.**

Receiver of corporation *held,* not liable for conversion or trespass, as to goods of corporation in another state, where, on receiver's report, there was no evidence of value of the property, and where the appointment of receiver did not affect such property, and corporation had merely neglected to exercise its right to manage and control it.

**15. Corporations ☞687—Corporation held not entitled to recover from receiver for conversion of property beyond receiver's jurisdiction, where receiver's acts relative to property were acquiesced in by corporation under mistake as to receiver's authority.**

Corporation, which assumed that receivership extended to property in another state and voluntarily co-operated with receiver by sending bills to him for payment, was not entitled to recover from receiver for conversion of property in the other state, where receiver had no authority there, and had not taken possession of the property, since corporation could not recover damages for its own inaction, founded on a mistake in its view of receiver's right of possession.

**16. Corporations ☞687—Money received by corporation's receiver from bank in another state, representing sales of merchandise therein, was returned to corporation at office in other state notwithstanding ouster by local state courts (Comp. St. Neb. 1922, §§ 9280–9307).**

Money received by corporation's receiver from bank in another state, realized from sales of merchandise therein, *held* not property of corporation within local state, and therefore not within control of trustees appointed by local state court in ouster proceedings, under Comp. St. Neb. 1922, §§ 9280–9307, but legal title remained in receiver, and money was required to be returned to corporation at its office in the foreign state, in proceedings had on receiver's report.

**17. Corporations ☞687—Receiver was required to return to corporation, with legal interest, deposit in another state which receiver withdrew without authority.**

On report of receiver as to corporation's property, receiver *held,* required to repay to corporation, with interest from date of withdrawal, money withdrawn without authority from bank in another state, which was on deposit to corporation's credit.

**18. Corporations ☞687—Receiver held not liable to corporation for interest on money derived from sales in another state and received without authority, during such period as corporation consented.**

Where money derived by corporation from sales of merchandise in another state was received by receiver with corporation's consent, notwithstanding receiver's want of authority in the other state, receiver on final report was not liable to corporation for interest, except from date, when corporation manifested its intention no longer to co-operate with receiver as to its property in the foreign state.

**19. Corporations ☞687—Claims presented on corporate receiver's report for drayage and storage and rent of office building and safety deposit box held allowable (Comp. St. Neb. 1922, § 2837).**

Items of expenditures incurred by receiver of manufacturing corporation for storage and drayage, and for office rent of corporation's building, and for rent of safety deposit box, *held* necessary and proper expenses incurred for benefit and preservation of corporation's property, and therefore properly payable on receiver's report, though no interest was allowed on claim for storage and drayage, under Comp. St. Neb. 1922, § 2837.

*Appeal from the District Court of the United States for the District of Nebraska;* Thomas C. Munger, Judge.

Report of H. E. Close, receiver of the Brictson Manufacturing Company, in which certain claims were presented, and trustees of the Brictson Manufacturing Company, appointed by the state court, intervened. From decrees entered, ordering the receiver to turn over moneys in his possession, the Brictson Manufacturing Company appeals. Affirmed.

William M. Giller, of Omaha, Neb. (M. E. Culhane, of Minneapolis, Minn., and Frank L. Weaver, of Omaha, Neb., on the brief), for appellant.

David A. Fitch, of Omaha, Neb., for appellee West.

T. J. McGuire and A. C. R. Swenson, both of Omaha, Neb. (Ora S. Spillman, Atty. Gen., and Charles E. Foster, of Omaha, Neb., on the brief), for appellees State of Nebraska, Spillman, Foster, Moriarty, and Marcell.

J. M. Sturdevant, of Omaha, Neb. (De E. Bradshaw, of Omaha, Neb., on the brief), for appellee Sovereign Camp, Woodmen of the World.

Ralph A. Van Orsdel, of Omaha, Neb. (Frank H. Gaines, of Omaha, Neb., on the brief), for appellee Gordon Fireproof Warehouse & Van Co.

W. N. Chambers, of Omaha, Neb., for appellees Rosso, Chambers, Byrne, and Midway Service Station.

Before KENYON and VAN VALKENBURGH, Circuit Judges, and JOHN B. SANBORN, District Judge.

KENYON, Circuit Judge. The facts in this case are so extended that the statement thereof covers more than a hundred pages of appellant's brief. We shall set forth only those which seem necessary to a fair understanding of the issues involved. In 1921 appellees, who were minority stockholders in the Brictson Manufacturing Company, appellant (a corporation existing under the laws of South Dakota), brought action in the United States District Court of Nebraska, Omaha Division, alleging fraud upon the part of the officers of said company in the management thereof, and asking the appointment of a receiver. Ralph W. West was appointed receiver September 3, 1921, and ordered to take immediate possession of appellant's properties, whether in the state of Nebraska or elsewhere, and to operate the same subject to the orders of the court. From this order an appeal was taken to this court, and it was held that the trial court had abused its discretion in granting the receivership. The order was reversed, with directions that the receiver "be required to return all property in his hands to those from whom he received it." Brictson Mfg. Co. v. Close et al. (C. C. A.) 280 F. 297, 301. When this mandate was filed in the trial court, that court permitted certain stockholders to intervene, and the property was not returned to appellant as provided by said mandate. A mandamus proceeding was then commenced in this court against District Judge Woodrough to require him to carry out the mandate of this court. In that case, referring to the petition for mandamus and the return of the respondent, this court said, after discussing the reasons given for not complying with this court's mandate:

"It also appears that the petitioning stockholders have a small minority of the issued and outstanding shares. These alleged facts, says the learned District Judge, caused him to 'suspend that part of the mandate which ordered your respondent to turn said money over to said O. A. Brictson (from whom it was received as treasurer of the company) until the said matters and things set forth in said petition of intervention could be inquired into.'" Brictson Mfg. Co. v. Woodrough, District Judge, 284 F. 484, 486.

This court held that the showing made by respondent in his return was not sufficient, and said (page 487):

"We conclude that no reason is shown why respondent should not have complied fully with the mandate, in entering the orders which it required. When he is advised of the views here expressed, he will doubtless at once comply, and there will be no occasion to issue the writ; but on his failure to do so within a reasonable time it will be directed that the writ issue."

An order was entered by the trial court in conformity with the direction of this court. Thereafter said court approved a report made by the receiver, filed November 21, 1922. The result of this was a second mandamus proceeding by appellant against Judge Woodrough (Brictson Mfg. Co. v. Woodrough, 289 F. 1020), and a writ of mandamus was granted by this court February 9, 1923, commanding the said trial court to vacate, set aside, and annul the order entered by it November 21, 1922, approving the report of the receiver, and providing further:

"That you as District Judge of the United States for the District of Nebraska, on application of said Ralph M. West as such receiver, or of any of the parties to the suit upon notice to the parties to the suit, may, after said order of November 21, 1922, has been vacated and set aside, take testi-

mony, and therefrom determine and ascertain what expenditures, if any, made by said Ralph M. West as receiver were necessary to be made for the preservation of and for the benefit of the property so held in receivership through the hand of said Ralph M. West, and thereupon allow to him as credits and as charges to be deducted from the funds in his hands as receiver such expenditures made before the filing of this application, and to tax any sum allowed said receiver for his services as such against petitioners in the cause in which he was appointed such receiver, to wit, Close et al. v. Brictson Manufacturing Co., no part of the same to be paid out of the funds under his control; and provided, further, that for the sums so allowed such receiver and charged against the funds in his hands as such receiver and for any liabilities incurred by him as such receiver and remaining unpaid, you as respondent will, at the same time, enter judgment for recovery from and over in favor of the Brictson Manufacturing Company and against the petitioners in the cause of Close et al. v. Brictson Manufacturing Company, in which said Ralph M. West was so appointed receiver."

Between the time of the determination of the first mandamus proceeding and the making of the order of February 9, 1923, a number of stockholders of appellant company brought suits in the district court of Douglas county, Nebraska, attempting to attach and garnish funds and properties in the hands of the receiver. This question arose in connection with the second mandamus suit, and this court held in the order of February 9, 1923, that the response of the District Court as to the garnishment of the funds in the hands of the receiver was not sufficient as a response to the citation, for the reason that those funds were in the custody of the law and under the control of the United States District Court, and that it was the duty of said court to protect said funds for final distribution in the case in which the receiver was appointed.

On February 16, 1923, the trial court, in pursuance of the mandate of this court, entered an order vacating, setting aside, and annulling the order entered by it on the 21st day of November, 1922, approving the report and accounts of the receiver, and also entered an order providing for the taking of testimony to determine and ascertain what expenditures made by the said receiver were necessary for the preservation and benefit of the property held in receivership.

On March 8, 1923, Judge Woodrough issued a restraining order enjoining some 48 plaintiffs from prosecuting their suits which had been brought in the district court of Douglas county, Nebraska, against appellant, and which attempted by attachment and garnishment to tie up the funds and real estate of appellant, the order providing that said writs of attachment or garnishment should be restrained only as long as the property was in the custody of the receiver and before a final discharge of said receiver was entered by the federal court.

In March, 1923, the Attorney General of Nebraska brought a quo warranto proceeding against appellant, and obtained a temporary restraining order restraining appellant from exercising any corporate franchise powers, rights, or privileges in the state of Nebraska, and from collecting or receiving any rights or demands belonging to it, or transferring any of the deposits, moneys, securities, property, or effects owned by it. The bill of complaint in the quo warranto action bears some similarity to the bill of complaint in the original action brought by appellees in the United States District Court. The state trial court held in favor of the state and against appellant. In said action trustees were appointed for the creditors and stockholders of appellant corporation, and were empowered to collect the debts, property and assets of the corporation within the state of Nebraska, to pay the liabilities and divide the surplus among those lawfully entitled thereto. Said trustees, however, never entered into possession of the assets of the property, the same being in the hands of the receiver. This case was appealed to the Supreme Court of Nebraska (State ex rel. Spillman, Atty. Gen., v. Brictson Mfg. Co., 113 Neb. 781, 205 N. W. 246, 41 A. L. R. 992), and that court held that the Brictson corporation, being a foreign corporation licensed to do business in Nebraska, having violated the law or fixed policy of the state, could be ousted therefrom in an action of quo warranto brought by the Attorney General in the name of the state, and that the evidence was sufficient to sustain the judgment of the trial court in ousting appellant from the state, but held the evidence was insufficient to decree distribution of the assets of the corporation among its creditors and stockholders.

Later a rehearing was granted and the Supreme Court of Nebraska rendered another opinion, modifying its first opinion (114 Neb. 341, 207 N. W. 664, 44 A. L. R. 1172), and held that in the proceeding under section 9295 et seq. of the Nebraska statutes the trustees

were authorized to take charge of the property of the ousted corporation which was within the state, to collect the debts and pay the liabilities due to citizens or residents of the state. The concluding portion of said opinion is as follows: "The judgment of the district court is modified, so as to require the trustees to collect the debts due the corporation, pay the liabilities of the corporation, and, when properly ordered, pay over the surplus, if any, to those thereto entitled, as provided by section 9298, Comp. St. 1922."

One of the buds of the parent suit was a petition by appellant filed at the December, 1923, term of this court, asking an order directing the Attorney General of the state of Nebraska to show cause why he should not be dealt with as for contempt of certain orders and decrees of this court with relation to the matters hereinbefore referred to, and further asking as to plaintiffs and their attorneys in the various actions commenced against appellant in the district court of Douglas county, Nebraska, for an order requiring them to dismiss said actions and the attachments, garnishments, and restraining orders in said state court, and to enforce such order by appropriate proceedings as in cases of contempt.

A hearing was had before this court on these matters and the petition was dismissed. An offshoot of the original case came before this court on appeal from the refusal of the District Court to allow attorney fees to appellant's attorneys, the trial court having dismissed the petition as not stating facts sufficient to authorize the relief sought. This court sustained said action. Culhane et al. v. Anderson (C. C. A.) 17 F.(2d) 559.

April 10, 1925, an affidavit of O. A. Brictson, president of appellant corporation, having been filed in the United States District Court at Omaha to the effect that Judge J. W. Woodrough, United States District Judge for the District of Nebraska, before whom these proceedings were pending, had a personal bias and prejudice against the appellant, Hon. Thomas C. Munger, United States District Judge for the District of Nebraska, was designated by the Senior Circuit Judge to hear, try, determine, and dispose of this case, and Judge Munger proceeded to take charge of this litigation. During October and November, 1925, appellant secured orders in the case requiring the receiver, the Attorney General of Nebraska, and the trustees to show cause why the receiver should not comply with the mandate of this court. These parties appeared and answered these orders. Appellant moved to dismiss the answer of the receiver, but the same was overruled, and an order was made requiring the receiver to make a report. This was done, and exceptions were duly filed thereto.

In June, 1926, Judge Munger made an order requiring the receiver to file a disclaimer as to the property of the Brictson Manufacturing Company in South Dakota. This the receiver did. In the same month the District Court made an order restraining and enjoining the attachment and garnishment suits in the state court, and required that the same be dismissed, and all levies thereunder be released.

In the meantime the real estate belonging to appellant in Omaha had been sold for taxes, and in the spring of 1926 appellees Rosso and Chambers, copartners, obtained a deed therefor from one Byrne, who had secured the tax title to substantially all the real estate which appellant owned in Omaha. The receiver in his report set up the claims of the Gordon Fireproof Warehouse & Van Company for storage charges on property of the Brictson Manufacturing Company, and also the claim of the Sovereign Camp of the Woodmen of the World for rent of office. These various matters came on for trial before Judge Munger, the matters heard being (1) the application filed October 9, 1925, of O. A. Brictson, as president of the Brictson Manufacturing Company, asking that the receiver be required to return all property in his hands to those from whom he received it; (2) the petition of the Brictson Manufacturing Company for an order on the Attorney General of Nebraska and the trustees appointed in the state court to show cause why the receiver should not comply with the mandate of the Circuit Court of Appeals; (3) the report of the receiver filed in the case, and the objections and exceptions thereto made by the Brictson Manufacturing Company, and the reply of the receiver thereto (these involved the question of the claim of the Sovereign Camp of the Woodmen of the World and the Gordon Fireproof Warehouse & Van Company for rental and storage); (4) the validity of the tax deed made to Byrne and the question of the amount to be allowed Rosso and Chambers, purchasers from Byrne of the real estate for permanent and beneficial improvements.

November 3, 1926, Judge Munger rendered a decree ordering the receiver to send to the Brictson Manufacturing Company in South Dakota the sum of $9,516.16, with interest thereon, being money the receiver had received from funds deposited in the Bank of Brookings, S. D., by the Brictson Manu-

facturing Company, and also moneys from the sale of merchandise made in South Dakota in pursuance of orders received after the receiver was appointed, deducting therefrom certain expenses, which he found were $1,933.02. The decree denied the claim of the Brictson Manufacturing Company to damages as against the receiver for impairment of the value of its property both in South Dakota and in Nebraska, the court holding that, even if such damages were allowable as to the property in South Dakota, there was no evidence to sustain any such claim. The decree also provided a number of payments to be made, among which were the sum of $2,378.75 to the Gordon Fireproof Warehouse & Van Company for storage and drayage up to September 29, 1926, $1,615 to the Sovereign Camp of the Woodmen of the World as office rent, and $1,043 to Gregerson Bros. as balance due for services rendered to the receiver. It provided for the receiver holding in his possession cash and United States bonds or other securities to the extent of $50,000, pending the final determination of the right of Weaver, Giller, and Culhane for attorney fees, and pending the final determination of the right of Rosso and Chambers to the land secured from Byrne, and that the remainder of the property and assets of the Brictson Manufacturing Company should be turned over to John F. Moriarty, Charles E. Foster, and John T. Marcell, the trustees appointed by the district court of Douglas county, Nebraska, in the case of State ex rel. Spillman v. Brictson Manufacturing Co. The court retained jurisdiction in its decree in order to require full compliance with its terms.

November 27, 1926, the court entered a supplemental decree relative to the application of the Brictson Manufacturing Company and the trustees thereof to cancel the tax deed issued to J. J. Bryne by the county treasurer of Douglas county to the land owned by appellant in Omaha. The court ordered the tax deed to Byrne and the conveyance by him to Rosso canceled and set aside on condition that the receiver should pay to Rosso the taxes which he had paid, with interest, and should further pay to him the sum of $4,500 as enhanced value of the land by reason of the permanent beneficial improvements made thereon by Rosso, and the receiver was ordered to pay the same out of the funds in his hands. An appeal was perfected from the decree of November 3, 1926, and a separate appeal from the supplemental decree of November 27, 1926, and a separate appeal likewise from both decrees. These three

appeals were by order of the court consolidated into one to be heard upon the same record.

After the decision of Judge Munger upon the matters now before us appellant filed in this court application for leave to file a petition for writ of mandamus and to have issued thereon a show-cause order against Judge Munger to compel carrying out the mandate of this court. As the matters sought to be presented by that petition were preserved in the pending appeals, this court denied the application. Brictson Mfg. Co. v. Munger, 20 F.(2d) 793. This recital of facts suggests that this litigation is assuming rivalry with the somewhat famed case of Jarndyce and Jarndyce as portrayed in Dickens' Bleak House.

It is apparent, from proceedings subsequent to the issuance of the mandate to carry out the decision of this court in Brictson Mfg. Co. v. Close et al., 280 F. 297, and prior to the time Judge Munger was designated to straighten out the clouded and entangled issues, that if there was not a studied attempt to avoid carrying out said mandate there was at least no effort to make it effective. It is obvious from the record in some of the various cases touching on these matters which have been brought to this court that Judge Woodrough felt that the carrying out of the mandate of this court would result in a grievous injustice. At the time he made the order permitting the filing of a petition of intervention, and suspending action on that part of the mandate of this court which required turning over the assets in the hands of the receiver to the Brictson Manufacturing Company, he said (record in case No. 227 Original, Brictson Manufacturing Co., a Corporation, v. J. W. Woodrough, p. 26):

"On the first reading of the petition I felt that, if these facts are so, whatever jurisdiction I have to proceed further, and whatever limitations there are, whatever defects there are in the form of the petition of intervention, still the one thing that does appear obvious to me is the unconscionable injustice of immediately turning $90,000 practically in money over to Mr. Brictson."

With reference to the failure of the trial court to comply with the mandate of this court it was said in an opinion by Circuit Judge Stone in Culhane v. Anderson, 17 F. (2d) 559: "On September 3, 1921, a receiver was appointed by Judge Woodrough, in the District of Nebraska, for the Brictson Manufacturing Company, in a cause entitled H. E. Close et al. v. Brictson Manufacturing Co. This court determined (280 F. 297) that

the trial court should not have appointed a receiver and ordered restoration of the property, taken by the receiver. The trial court refused to comply with the mandate of this court therein and the subsequent confusion and trouble, into which this case has become entangled, is clearly traceable thereto. Later mandamus from this court to secure such compliance was authorized. 284 F. 484. In the meantime, legal confusion has arisen which has made it difficult to return this property." While this court should be insistent that its mandates be carried out, no pride of opinion should prevent it from recognizing that the status of appellant since the mandate was issued has been changed by legal proceedings. That the mandate could have been complied with prior to the decision of the state court in the quo warranto proceedings is apparent, but that matter is now water over the dam.

[1] Other questions in this case are of minor importance, compared with the one as to the effect of the quo warranto action brought by the Attorney General of the state and the affirmance of the ouster of appellant from the state of Nebraska by the Supreme Court of that state. Appellant claims, first, that the law of Nebraska as construed in the quo warranto action violates the Fourteenth Amendment to the Constitution, because it has been used as a scheme to accomplish a forbidden result; second, that the law of Nebraska as construed in the quo warranto action violates article 1, § 8, of the United States Constitution; third, that said action was one in rem, with the res in the custody of the federal court, and hence any judgment therein affecting such properties was void.

These various contentions were before the state court. The Supreme Court of Nebraska has held that under its statutes (part 4, c. 20, art. 8, Comp. St. 1922) trustees may be appointed to take charge of the property of a foreign corporation within the state, which has by the judgment of the court been ousted from the state and denied the right to transact further business therein. Appellant was a party to that suit. It joined issue and litigated the questions, which were substantially the same as are now raised here. If the judgment of the state court was void for want of jurisdiction of the subject-matter or the person, or if it was without doubt that the statutes under which action was taken were in violation of the federal Constitution and void, then the judgment of the state court could be attacked collaterally. It is not questioned that jurisdiction of the corporation and of the subject-matter existed, nor can we say that upon the face of the record it is without doubt that the proceedings and the judgment were absolutely void as violative of the Fourteenth Amendment to the Constitution. Therefore appellant is not in position to attack the judgment collaterally. The constitutionality of the Nebraska statute could have been reviewed by the Supreme Court of the United States. It was pointed out by this court, at the time of the hearing upon the contempt proceeding, that appellant, to test the question of the constitutionality of the Nebraska act should have gone on to the · Supreme Court of the United States. It is not for this ·court to set aside the construction of a Nebraska statute by the Supreme Court of Nebraska. The law as we understand it is stated in 34 C. J. 1158, §· 1640, as follows:

"A judgment rendered by a state court of competent jurisdiction is binding and conclusive upon the parties when made the basis of a claim or defense in any court of the United States, and cannot be reviewed or re-examined as to the merits of the original controversy. It will be conclusive as to all points and questions actually put in issue and decided in the action in the state court, whether federal, general, or local.".

In Mitchell v. First National Bank of Chicago, 180 U. S. 471, 481, 21 S. Ct. 418, 422 (45 L. Ed. 627) it is said:

"Whatever may be the nature of a question presented for judicial determination— whether depending on federal, general, or local law—if it be embraced by the issues made, its determination by a court having jurisdiction of the parties and of the subject-matter binds the parties and their privies so long as the judgment remains unmodified or unreversed."

[2] The Supreme Court of Nebraska in the quo warranto proceeding brought by the Attorney General on behalf of the state found that the District Court was justified in ousting the Brictson Manufacturing Company from doing business in Nebraska; found that the trustees were entitled to take charge of the property of said corporation within the state for the purpose of paying the creditors, and that the balance should be turned over to the parties whom the court might direct. It seems to us the federal court had no other alternative than to abide by the binding effect upon appellant of that unchallenged decision. South Dakota Cent. Ry. Co. v. Continental & C. T. & S. Bank (C. C. A.) 255 F. 941; Cooper v. Reynolds, 10 Wall. 308, 19 L. Ed. 931; Windsor v. McVeigh, 93 U. S. 274, 23 L. Ed. 914; Dowell v. Applegate, 152 U. S. 327, 14 S. Ct. 611, 38 L. Ed. 463;

Deposit Bank v. Frankfort, 191 U. S. 499, 24 S. Ct. 154, 48 L. Ed. 276; National Exchange Bank of Tiffin v. Wiley, 195 U. S. 257, 25 S. Ct. 70, 49 L. Ed. 184; Hartford Life Ins. Co. v. Ibs, 237 U. S. 662, 35 S. Ct. 692, 59 L. Ed. 1165, L. R. A. 1916A, 765; Marin v. Augedahl, 247 U. S. 142, 38 S. Ct. 452, 62 L. Ed. 1038; Mueller v. Derwae, 175 Wis. 580, 185 N. W. 202; Freeman on Judgments, vol. 1, § 305; Black on Judgments, vol. 1, § 245.

While not necessary, in view of our conclusion as to a collateral attack upon the judgment of the state court, we refer to appellant's claim that the law as construed by the Supreme Court of Nebraska violates the Fourteenth Amendment, because it is used as a scheme to accomplish a forbidden result. This is the only violation of the Fourteenth Amendment urged. In Fidelity & Deposit Co. v. Tafoya, 270 U. S. 426, 434, 46 S. Ct. 331, 332 (70 L. Ed. 664) the court said: "Coming then to the merits, we assume in favor of the defendants that the state has the power and constitutional right arbitrarily to exclude the plaintiff without other reason than that such is its will. But it has been held a great many times that the most absolute seeming rights are qualified, and in some circumstances become wrong. One of the most frequently recurring instances is when the so-called right is used as part of a scheme to accomplish a forbidden result." Appellant plants itself upon this case.

[3] Were we in error in holding that the judgment of the state court was not subject under the circumstances presented to collateral attack, in order to sustain the theory of appellant we should have to conclude that the Attorney General of Nebraska had operated collusively with the stockholders to prevent the carrying out of the mandate of this court and thus accomplished a forbidden result. This we would be slow to believe and accept, although appellant does not hesitate to so charge. In connection with the cases brought in the state court, the Attorney General of Nebraska and others were cited by this court to show cause why they should not be dealt with for contempt of the process of this court, and upon hearing were discharged. It is evident from the pleadings in the quo warranto proceeding that the Attorney General of Nebraska believed that the Brictson corporation was not a good-faith corporation; that it had floated large amounts of stock, with no substantial assets; and that it had swindled and defrauded many citizens of the state of Nebraska by the issuance of worthless stock. It is apparent from the at-

25 F.(2d)—51

titude of and remarks of Judge Woodrough, heretofore set forth, that he was of the same mind. If this was the opinion of the Attorney General, it was not only his privilege, but duty, to bring proceedings to oust such corporation from the state. Of course, the date of commencing suit by him in the state court with reference to the order of this court of February 9, 1923, together with the similarity in the petitions of appellees in the original suit and the allegations in the petition of the quo warranto proceeding might arouse some question in a suspicious mind, but would not in our judgment be sufficient to hold that the quo warranto proceeding brought by the Attorney General of the state was in bad faith and to accomplish a forbidden thing. To this particular ground of unconstitutionality relied on by counsel for appellant we could not agree.

[4] The question of the violation of subdivision 3, section 8, article 1, of the Constitution, referring to the right of Congress to regulate commerce among the several states, could hardly be seriously urged as a reason for holding the quo warranto action as unconstitutional. While the Brictson Manufacturing Company was organized under the laws of South Dakota, the principle place of business was the state of Nebraska. Its real estate was in Nebraska; likewise its head offices, and its operations were there conducted. There was no interference on the part of the state with the right of Congress to regulate interstate commerce.

[5, 6] The other contention is that the quo warranto action did not lie because it was an action in rem and the res was in possession of the federal court. The quo warranto action did not seek to disturb the possession of the receiver of the property in the federal court. Such property was not subject to seizure while in the hands of the receiver, Covell v. Heyman, 111 U. S. 183, 4 S. Ct. 355, 28 L. Ed. 390; In re Tyler, 149 U. S. 164, 13 S. Ct. 785, 37 L. Ed. 689; Field v. Kansas City Refining Co. (C. C. A.) 9 F. (2d) 213; and it is not claimed it was. The restraining order issued by the state court sought to prevent appellant or any of its officers from receiving the property. We assume a federal court would pay no attention to such order. It could have no force or effect until after the property had left the hands of the receiver.

[7] We have referred to these questions in passing, although, as previously stated, we think they were all involved in the decision of the Supreme Court of Nebraska, and that we are precluded from determining them.

We are forced to the conclusion that Judge Munger correctly held that, under the changed condition of affairs, the mandate of this court requiring delivery of the property in Nebraska to the Brictson Manufacturing Company by the receiver could not now be carried out. As long as the judgment of the state court in the quo warranto proceeding stands, the Brictson Manufacturing Company could not in Nebraska receive said property. Trustees appointed by the state court in the quo warranto proceeding are the successors in interest and stand in the place of the Brictson Manufacturing Company, and are entitled under the decision of the Nebraska Supreme Court to take over the assets in Nebraska of the Brictson Manufacturing Company. On this question we quote from Judge Munger's opinion in the trial court:

"One of the first questions to be determined is the effect upon the rights of the parties in this case of the decree of the district court of Douglas county, Nebraska, as affirmed by the Supreme Court of Nebraska. The Circuit Court of Appeals, at the instance of the Brictson Manufacturing Company, directed that the receiver should return the property which he held to those from whom he received it. He received from the Brictson Manufacturing Company a large amount of personal property which was in Nebraska when he was appointed receiver. He also took possession of some land in Nebraska belonging to the company. A vigorous attack has been made by the Brictson Manufacturing Company, challenging by pleading and evidence, the conduct of the receiver in his mode of handling some of this property. The Brictson Manufacturing Company seeks to have the receiver's report, so far as it covers this property, reduced in some of the items of credits claimed by the receiver, and to have the receiver held responsible in his accounting for losses alleged to have occurred by reason of his negligence. The effect of the decree in the state court of Douglas county, Nebraska, was to oust the Brictson Manufacturing Company from the state of Nebraska and to forfeit its privilege to exercise any corporate rights in the state.

"It appointed trustees to take over the assets of the corporation, to pay its liabilities and to divide any surplus among those entitled thereto. The corporation and its officers and agents were perpetually enjoined from collecting any debts held by the corporation, or from using or transferring any of the monies or property of the corporation. The trustees have qualified and are ready to act under this decree. It would manifestly be impossible for the Brictson Manufacturing Company to receive, in Nebraska, any of the property in the hands of the receiver. The mandate of the court of appeals could not now be carried out, so far as it required delivery by the receiver of the property which was in Nebraska to be returned to the Brictson Manufacturing Company. Administrators of the estate of the Brictson Manufacturing Company have been appointed by the state court who have the sole right to receive and to distribute the property of the corporation which the receiver obtained from the Brictson Manufacturing Company in Nebraska. * * *. This change in the rights of the parties since the mandate of the Circuit Court of Appeals makes necessary a change in the method of executing it similar to the situation, if death had removed one of the parties from whom property had been received, and an administrator for his estate had been appointed. The trustees, as the successor in interest to the Brictson Manufacturing Company, have made no objections to the receiver's reports, in the answers which the trustees have filed to the order to show cause, or otherwise. The conclusion is that the Brictson Manufacturing Company has no right to question the accounts of the receiver as to property in Nebraska of which he took possession."

We have pointed out before that the mandate of this court provided that the District Court upon application of the receiver should take testimony and determine what expenditures made by the receiver were necessary for the preservation, and for the benefit, of the property, and should allow credits therefor to be deducted from the funds in his hands as receiver, although any sum allowed said receiver for his services was not to be taken from the funds. Under the proceedings arising on objections to the receiver's final report these matters have been considered by the trial court. The question of Byrne's tax deed to certain property, to which we have heretofore referred, and the reimbursement of Rosso and Chambers for permanent and beneficial improvements thereon, the claims of appellant for damages for diminution in value of its property in Nebraska and South Dakota, the claim of the Gordon Fireproof Warehouse & Van Company and the Sovereign Camp of the Woodmen of the World, are fully discussed in the opinion of Judge Munger filed in the District Court. We have read and considered the evidence in this case and are satisfied it is sufficient to support the conclusions of Judge Munger. As he has so satisfactorily dis-

cussed these matters in his opinion it would seem a work of supererogation for us to further discuss them. We therefore adopt as part of this opinion certain portions of his opinion (omitting certain compilations) as follows:

"At the same time that the final report of the receiver was submitted to the court, there was a hearing upon applications by the Brictson Manufacturing Company and by John F. Moriarty, Charles E. Foster, and John T. Marcell, as trustees for the Brictson Manufacturing Company, to cancel a tax deed to some of the Brictson Manufacturing Company's lands. The pleadings and evidence show that after the receiver was appointed, the lands were sold for the 1921 taxes due the state and its municipal subdivisions, and were again sold for the 1924 taxes, and in pursuance of these sales a tax deed was issued to the assignee of the purchaser in May, 1926, and the holder of the tax deed executed a quitclaim deed of the lands to Mark J. Rosso in May, 1926. Rosso repaired a building that was upon the land, and as an experienced contractor and builder testifies that the reasonable value of these services and the materials furnished in repairing the building was $2,828.50. He also hauled 2,000 loads of broken bricks, plaster, and dirt to fill in some low places in the land, and testified that the value of this material was $2,-000. No testimony was offered on behalf of the Brictson Manufacturing Company or the trustees.

"The Brictson Manufacturing Company has filed a petition alleging that Mark J. Rosso and Wm. N. Chambers and others claimed some interest in the lands because of these sales, and asking that the land be declared free from all liens asserted by reason of the tax sales and deeds and for an injunction against their occupation of the property. The trustees filed a similar petition. Rosso and Chambers answered, setting up the facts of the tax sale and deed, and the purchase of the property, the making of the improvements, and the amounts expended by them, and ask for reimbursement for these sums and for other relief, and replies were filed to these answers.

[8, 9] "The principles that govern a proceeding of this kind are well settled. This property was in custodia legis, even though the court had no jurisdiction to appoint the receiver, and it had the right and the duty to protect the receiver's possession, so that the property could be restored to those from whom it was taken. 1 Tardy's Smith on Receivers, § 26. As the property was in cus-todia legis, a tax deed to the property could not lawfully be procured, and such a deed, if procured, is void. Dayton v. Stanard, 241 U. S. 588, 36 S. Ct. 695, 60 L. Ed. 1190; In re Eppstein (C. C. A.) 156 F. 42, 17 L. R. A. (N. S.) 465; Bright v. State of Arkansas (C. C. A.) 249 F. 953; Virginia, T. & C. Steel & Iron Co. v. Briston Land Co. (C. C. A.) 88 F. 134; 1 Tardy's Smith on Receivers, § 687.

[10-12] "The court has the power to protect the property in the custody of the receiver, without the allegation of any further grounds for exercising equitable jurisdiction. In re Tyler, Petitioner, 149 U. S. 164, 13 S. Ct. 785, 37 L. Ed. 689; Ledoux v. La Bee (C. C. A.) 83 F. 761. As this is a proceeding in equity, the cancellation of the tax deed and of the conveyance by the grantee of the tax deed to the intervener Rosso can only be granted upon condition that equity is done towards the grantee who is in possession. The pleadings do not disclose the amount of the taxes paid. The evidence does not show the amount of the second sale, nor the amount paid to redeem from the sale. The receiver should pay to Mr. Rosso $676.-30, the amount of the taxes which were paid to the county treasurer at the time of the first tax sale, and the amount paid by J. J. Byrne, as the tax purchaser, to the county treasurer, to redeem the sale of the taxes for 1924 together with interest on such payments at the rate of 7 per cent. from the date when such taxes were paid. Dayton v. Stanard, 241 U. S. 588, 36 S. Ct. 695, 60 L. Ed. 1190, note L. R. A. 1915C, 511 and cases cited.

"Mr. Rosso also claims a further sum because he is in occupation of the land, having purchased it in good faith from the holder of the tax deed believing that he was acquiring it from the owner, and in good faith has placed valuable improvements on the land, and the evidence sustains this claim. It is not believed that sections 5665-5675 of the Compiled Statutes of Nebraska control the remedy or the mode of administering it in this court in a case of this kind, but the true rule is, that in this proceeding in equity, compensation must be made to Mr. Rosso for any permanent and beneficial improvements that he has made upon the land. Pom. Eq. Jur. § 1241; Warvell on Ejectment, § 545. This is not to be measured by the cost of the improvements, nor by their value apart from the land, but the measure of recovery is the enhanced value of the land solely by reason of such improvements. Newell on Ejectment, p. 632; Noble v. Bid-

dle, 81 Pa. St. 430, and this is the rule under the Nebraska statute. Lothrop v. Michaelson, 44 Neb. 633, 63 N. W. 28; Gombert v. Lyon, 72 Neb. 319, 100 N. W. 414. It may .be that the reasonable cost of the permanent and beneficial improvements in this case is also the enhanced value of the land solely because of them, but it is not necessarily so. * * *

"From the reports of the receiver, the pleadings, and the evidence, it appears that at the time of the appointment of the receiver, the Bricston Manufacturing. Company was possessed of a large amount of personal property in a leased building at Brookings, S. D. This consisted chiefly of tires and tubes for automobiles, a stock of leather and rivets used in the construction of a cover or tread to be used upon automobile tires, and some machinery and other. articles used in connection with this stock. No order was procured from a court in South Dakota extending the receivership of Mr. West to the property in that state. Before the receivership the business of· the corporation was usually transacted at the Omaha office in Nebraska. The principal office was at Omaha, and purchases and sales were usually made as a result of correspondence and orders received at that office. The plant at Brookings was in the nature of a factory and warehouse, where the articles used in the sale and manufacture of tires, tubes, and covers for tires were kept and prepared. The Brictson Manufacturing Company allege that the receiver took possession of this factory and warehouse, without right, and seek to hold him responsible for losses claimed to have been suffered in the depreciation in value of the stock of goods at that place. The order appointing the receiver designated him as receiver of the property of the company wherever situated. On February 17, 1922, the receiver filed an application asking authority to sell the stock of tires and tubes in South Dakota, and the court made an order on the same day authorizing a sale to be made by the receiver. Negotiations were entered into for the sale but the sale was not consummated. The receiver did not go to South Dakota. There is no sufficient evidence that he ever took physical possession of the plant and stock at Brookings. He sent an appraiser there to list and inventory the stock. The plant continued to be in the personal control and possession of A. A. Brictson, who had had charge of it before the receivership. He kept the key to the building. It seems to have been assumed by the officers and

agents of the Brictson Manufacturing Company that the receiver was entitled to the property ·at South Dakota, but there is no direct evidence to show how this assumption arose. The receiver would send orders which he had received in the mails for goods of the Brictson Manufacturing Company to the factory at Brookings and these orders seem to have been filled by the shipment of the goods to the purchasers. The money for such purchases was received at the Omaha office, usually directly from the customers. The receiver for a short time paid the expenses of those who were in custody of the factory and warehouse at Brookings, such as wages of one or two persons, some bills for coal and lumber and other small articles, and continued to pay the wages of A. A. Brictson until about March, 1922.

"The Brictson Manufacturing Company began a suit in the United States District Court on February 28, 1922, to enjoin Ralph M. West from interference with the conduct of the business of the Brictson Manufacturing Company at Brookings, and a preliminary injunction was granted restraining him from interfering with the property of the Brictson Manufacturing Company in South Dakota. In that case the receiver filed an answer in which he alleged that O. A. Brictson had voluntarily delivered to him the property in South Dakota, and that he had been in complete possession and dominion over that property since September 3, 1921, administering it under the orders of the United States District Court of Nebraska. Notwithstanding this admission, it appears that the receiver did not have physical possession of the property. His admission seems to have been founded on a ·mistaken supposition of the legal effect of the order of the court in Nebraska appointing` him as receiver, and of the legal effect of filling of orders which he sent to Brookings and of his payment of expenses of the factory.

[13, 14] "Assuming, without deciding, that the Brictson Manufacturing Company may hold the receiver in this accounting for acts of negligence or waste, if committed by him while acting as receiver of the property at Brookings, or for conversion or trespass, if committed by him in taking possession of this property, there are fatal defects in the proof of damages as to the greater part of the goods. The amount of goods at Brookings when the receiver is claimed to have taken possession is not established. An inventory was taken by four men in July, 1926, almost five years after the receiver

was appointed. Only two of these men were called as witnesses. The mode of inventory was for one man to examine, form his own ideas of the quantity and quality, and to call off to another person what he claimed to have found. The other person put down in his list or inventory what was called off to him. After two of these men had labored for a period of time, the other two men took their places and proceeded in the same manner, one calling and one recording. The persons making the record relied entirely on the correctness of those who made the inspection and called the result of the judgment formed. The so-called inventory is not supported by testimony because its correctness is not verified by the persons who saw the goods. Another inventory was made at an earlier time by a Mr. Ruud, acting for the receiver, but this was made in a similar manner, Mr. A. A. Brictson (a relative of O. A. Brictson) calling to Mr. Ruud the articles. Mr. A. A. Brictson did not testify. The Brictson Manufacturing Company upon the hearing expressly disclaimed any benefit from the books made by Mr. Ruud. In the absence of this testimony as to the goods which were listed by some one who saw them, and who could testify what goods were at Brookings, the so-called inventories are but written hearsay.

"Another fatal defect in the proof arises because of the time when the receiver became liable for a loss, if it be conceded that he became liable. Assuming that the receiver took possession of the property at Brookings after his appointment, the evidence shows that a large amount of goods were sold between the appointment and March, 1922. In February, 1922, the Brictson Manufacturing Company, by means of its suit for an injunction in the United States District Court for South Dakota obtained the exclusion of the receiver from possession or interference with the property in South Dakota. It claimed and was awarded the right of property and possession thereof. It may not claim both the property and the value of the property. It elected to take over the property in South Dakota. The measure of damages, upon the theory of the Brictson Manufacturing Company as to the responsibility of the receiver would be the value of the property taken, less the value of the property returned. There is no sufficient evidence as to the value of the property returned nor as to the amount of the property so returned. No inventory appears to have been taken, no testimony as to the amount or quality or value of the

goods at that time, was given. It may be that the Brictson Manufacturing Company did not take physical possession of the property in South Dakota after this injunction was granted, but it was free to do so. The appointment of Mr. West as receiver, made in the United States District Court at Omaha, did not affect the property in South Dakota. There was no time when the Brictson Manufacturing Company did not have the right to control its property in South Dakota, and, if it chose to neglect to manage and control it, it must suffer the loss.

[15] "Assuming, again without deciding, that the Brictson Manufacturing Company may recover from the receiver in this accounting, the damages it may have suffered from conversion, trespass, or negligence of the receiver, although by its petition it seeks to enforce the mandate and order of the Circuit Court of Appeals for a return of the property itself, I do not find that the receiver was ever in possession of the property in South Dakota, nor that he was guilty of either trespass or conversion. There is no evidence of any demand for possession, or of the exercise of any force, physical or legal, for the surrender of the property. There was never any physical or legal impediment to the full possession and control of the property in South Dakota by the Brictson Manufacturing Company at any time. It may not recover damages resulting from its inaction, founded on its mistaken view of its right of possession. There was either a mistaken assumption on the part of the Brictson Manufacturing Company and its agents that the receivership extended to the property in South Dakota, or else a voluntary co-operation with the receiver, by which the orders received were sent to the factory at Brookings and shipments made from that point, and by which the bills for wages and incidental expenses at the factory were sent to the receiver for payment. The Brictson Manufacturing Company may not hold the receiver for these acts in which it voluntarily acquiesced. It was bound to know that the receiver had no authority in South Dakota, and it yielded to no show of force, physical or legal. The receiver has received $5,872.23 which was deposited in the Bank of Brookings by the Brictson Manufacturing Company. He received the sum of $5,636.95 from sales of merchandise, made in pursuance of orders received after the receiver was appointed, in the manner hereinbefore described.

[16] "The decree of the state court appointed trustees 'to collect the debts, property of

defendant corporation within the state of Nebraska.' The money received by the receiver from the bank in South Dakota and from the sales of merchandise therein, was not in any true sense of the words, property of the corporation in Nebraska. The legal title to it has at all times been in the receiver. His accountability for it was determined by the Circuit Court of Appeals before the decree was entered by the state court, and he was directed to return the property to those from whom it was received. This money, less any proper charge, should be returned to the persons from whom it was received. An order will be entered that the receiver shall transmit this money by the United States mail addressed to the Brictson Manufacturing Company at Brookings, S. D., the amount owing because of these receipts by means of a proper bank draft or express order payable to the Brictson Manufacturing Company, or, if the Brictson Manufacturing Company shall so request the receiver by writing filed in this case, then the receiver shall pay the amount into the registry of this court who shall forward the same to the Brictson Manufacturing Company at Brookings, S. D., by check drawn in the usual manner, payable to the Brictson Manufacturing Company. The expenses of the receiver, as shown in his reports filed November 21, 1922, and January 19, 1926, are claimed by him to have been necessary for the benefit of and for the preservation of the estate. I think the evidence supports this claim, but as the Brictson Manufacturing Company is no longer in position to attack these expenditures, because of the decree which has been rendered in the state court, the question is not now of major importance. It is of course possible, though not probable, in view of the amount of judgments against the Brictson Manufacturing Company shown by other records in this case that a surplus might be payable to the Brictson Manufacturing Company, after the debts are paid by the trustees. Of the expenses of the receiver, the following items are shown by the testimony to be checks given by the receiver in payment for expenses of operating the plant at Brookings: (These total $1,993.02.)
* * *

"These expenses were necessary for the preservation or were for the benefit of the property in South Dakota, and they were authorized to be made either expressly or by tacit consent of the Brictson Manufacturing Company, acting through its officers and agents. The receiver is therefore entitled to deduct from the $5,636.95 which he received, as heretofore stated, from the Bank of Brookings and from sales of merchandise at Brookings, this sum of $1,993.02 and the remainder of $9,516.16 is the sum which he should either transmit to the Brictson Manufacturing Company, or pay into the registry of this court, as hereinbefore indicated, together with interest thereon.

[17, 18] "The receiver was without authority to withdraw from the Bank of Brookings the $5,872.23 which was on deposit there to the credit of the Brictson Manufacturing Company. He should therefore pay interest thereon at the legal rate of 7 per cent. from the date of withdrawal, September 6, 1921, to the date of repayment to Brictson Manufacturing Company, which should be made as hereinbefore stated. As the money derived from the sales of merchandise was received by the consent of the Brictson Manufacturing Company, it is entitled to interest on the balance of $3,643.93 only from the date of February 28, 1922, when it manifested its intention, by the suit in the United States District Court for South Dakota, not longer to consent to co-operation with the receiver as to the property in South Dakota. Interest will be allowed on this balance of $3,643.93 from February 28, 1922, to the date when the receiver shall pay it to the Brictson Manufacturing Company or into the registry of this court, as heretofore indicated.

[19] "As a part of the receiver's report it is shown that he incurred obligations to the Gordon Fireproof Warehouse & Van Company for drayage and storage of the property in his possession at Omaha. Proofs were given of the nature and value of these services. It appears that the storage and drayage were necessary and proper for the benefit and preservation of the property. The amount due to September 29, 1926, was $2,378.75. Interest is not allowed. Section 2837, Comp. Stats. Neb. 1922.

"The receiver also shows that he incurred obligations to the Sovereign Camp, Woodmen of the World, for office rent in a building owned by it. The proofs show this was a necessary and proper expense for the benefit of the property held by the receiver and the amount due to October 1, 1926, was $1,615.

"The receiver's report also shows a balance due to Gregerson Bros. of $1,043, and this is shown to be a necessary and proper expense for the benefit of the property and was authorized by an order of the court.

"The receiver shows in his testimony,

though not in his report, that he is indebted to the First National Bank of Omaha, Neb., for the rent of a safety deposit box. This is also a proper item of expense for the benefit of the estate."

We are satisfied that the judgment and decrees of the trial court should be affirmed; and it is so ordered.

Affirmed.