## CLOSE et al. v. BRICTSON MFG. CO.

### No. 8901.

Circuit Court of Appeals, Eighth Circuit.

April 6, 1931.

Rehearing Denied May 16, 1931.

See, also, 43 F.(2d) 869.

Robert J. Webb, of Omaha, Neb. (Mulfinger & Webb and H. M. Kelley, all of Omaha, Neb., on the brief), for appellants.

H. V. Mercer and E. J. Lien, both of Minneapolis, Minn., for appellee.

William M. Giller, of Omaha, Neb. (M. E. Culhane, of Minneapolis, Minn., Frank L. Weaver, of Omaha, Neb., and R. A. Bielski and D. S. Elliott, both of Sioux Falls, S. D., on the brief), for Martin Engebretson.

Before STONE and BOOTH, Circuit Judges, and DEWEY, District Judge.

STONE, Circuit Judge.

This is an appeal from an order charging appellants with certain expenses of a receivership in a case filed by them and in which they sought and obtained the appointment of a receiver, which appointment was by this court adjudged to be improper. The order from which this appeal was taken was entered June 24, 1929. The allowances charged against appellants consisted of $1,000 allowed to the receiver for services, expenses, and attorney fees, and $8,295.81, representing amounts paid by the receiver upon orders of the court for storage, drayage, rental, and other matters in connection with the care and administration of the property in his hands as receiver.

Appellants make several contentions here.

I. The main contention is that this decree was not on a motion to tax costs and was without notice to appellants after the case had been dismissed as to them.

In August, 1921, eight stockholders of the Brictson Manufacturing Company filed a bill in the District of Nebraska before Judge Woodrough wherein, inter alia, they prayed a receivership of that company. A receiver was appointed and apparently took possession on September 3, 1921. An appeal from such order was determined by this court in an opinion filed April 5, 1922. 280 F. 297. In that appeal it was determined that the receivership proceedings were improper and that the order appointing the receiver be reversed "with directions that the receiver be required to return all property in his hands to those from whom he received it, that he be thereupon discharged, and that the bill be dismissed at complainants' costs." 280 F. 297, 301. The trial court (Judge Woodrough) failed to carry out the mandate.

In the meantime, various other stockholders had presented a petition in intervention to the trial court. The company filed a motion for action in compliance with the mandate. On that hearing, the court (August 3, 1922) announced: " * * * I therefore will suspend for the present the obedience to

that part of the mandate which orders me to turn the money over to the party from whom the receiver got it, who was O. A. Brictson;" and "for the present, therefore, I merely order the money impounded in the hands of the receiver until further proceedings are had on the petition as to intervention;" and "the order will now be entered suspending action on that part of the mandate which requires the money to be turned over to Mr. Brictson and granting leave to file the petition of intervention." An order was entered that day "that the petition of the plaintiffs, filed herein, be, and the same is hereby, dismissed at plaintiffs' costs. * * * That leave be, and the same is hereby granted to file said petition of intervention, and distribution of assets in the receiver's hands is hereby suspended until a hearing on same." Case 7932, p. 22.

The result was a mandamus proceeding here to enforce the mandate. Therein this court found such writ justified, but, out of consideration to Judge Woodrough, did not at once order the writ, but said: "When he is advised of the views here expressed he will, doubtless, at once comply, and there will be no occasion to issue the writ; but on his failure to do so within a reasonable time it will be directed that the writ issue." 284 F. 484, 487. The mandate thereon is dated October 30, 1922, and was received by Judge Woodrough on November 13, 1922. A few days thereafter, but of date November 13, 1922, the trial court made an order "that the receiver be required to return all property in his hands to those from whom he received it, and that he be thereupon discharged, and that the bill of complaint be dismissed at complainants' costs." On November 21, 1922, the receiver filed a detailed report of receipts and expenditures. On the same day this report was approved, and the receiver allowed $2,000 for his services. This was treated by the court as "the final report" of the receiver, the receiver was ordered to retain sufficient funds to pay the claims filed against him as shown in the report, and "upon complying with the order heretofore made by this court pursuant to the mandate of the Court of Appeals the said receiver be discharged."

This action of the court resulted in another petition for mandamus setting forth the actions of the trial court since receipt of the mandate. This court ordered the writ on February 8, 1923, and it issued as of February 9, 1923. 289 F. 1020. It was received by Judge Woodrough as of February 14, 1923. The writ required Judge Woodrough

to "immediately" vacate, etc., the above order approving the reports and accounts of the receiver, "provided, however, that you as District Judge of the United States for the District of Nebraska, on application of the said Ralph M. West as such receiver, or of any of the parties to the suit upon notice to the parties to the suit, may after said order * * * has been vacated and set aside, take testimony, and therefrom determine and ascertain what expenditures, if any, made by said Ralph M. West as receiver were necessary to be made for the preservation of and for the benefit of the property so held in receivership through the hand of said Ralph M. West and thereupon allow to him as credits and as charges to be deducted from the funds in his hands as receiver such expenditures made before the filing of this application, and to tax any sum allowed said receiver for his services as such against petitioners in the cause in which he was appointed such receiver, to-wit, Close et al. v. Brictson Manufacturing Company, no part of same to be paid out of the funds under his control; and Provided, further, that for the sums so allowed such receiver and charged against the funds in his hands as such receiver and for any liabilities incurred by him as such receiver and remaining unpaid, you as respondent will, at the same time, enter judgment for recovery from and over in favor of The Brictson Manufacturing Company and against the petitioner in the cause of Close et al v. Brictson Manufacturing Company, in which said Ralph M. West was so appointed receiver."

On February 16, 1923, Judge Woodrough made an order, solely to comply with the above writ, wherein he set aside his order of November 21, 1922, approving the report and accounts of the receiver, and stated that the receiver or any party to the suit might, upon notice to the parties to the suit, "make application for the taking of testimony and the determination and ascertainment therefrom by me what expenditures, if any, made by said Ralph M. West as Receiver were necessary to be made for the preservation of and for the benefit of the property so held in receivership through the hand of said Ralph M. West, in order that I may thereupon allow to such receiver as credits and as charges to be deducted from the funds in his hands as Receiver such expenditures made before the filing of the application for the writ of peremptory mandamus, and in order that I may tax any sum allowed said Receiver for his services as such against the petitioners in the cause in which he has been appointed Receiv-

er, no part of the same to be paid out of the funds under his control, and in order that for the sums so allowed such Receiver and charged against the funds in his hands as Receiver and for any liabilities incurred by him as Receiver and remaining unpaid, I may as Judge of the United States Court at the same time enter judgment for recovery from and over in favor of the Brictson Manufacturing Company and against the petitioners in the cause of Close et al. v. Brictson Manufacturing Company."

On March 9, 1923, the receiver filed such an application, verified on March 8, 1923. Therein he stated that he had incurred the expenses shown in his report and some since the report; that such were for the preservation and benefit of the property and should be allowed him as credits. Also he stated that he had been acting as receiver since September 3, 1921, and should have an allowance for his services as such. He prayed an order "fixing a time and place for the hearing of this Application and that upon such hearing testimony be taken and that a finding be made that the expenses incurred by your Petitioner were for the preservation and benefit of the funds in his hands, and that he be allowed credit therefor and that a reasonable allowance for his services as such Receiver be made."

Thereafter Judge Woodrough was disqualified, and Judge Munger was designated by the Senior Circuit Judge (Walter H. Sanborn) by designation filed April 10, 1925.

Why the above application of the receiver lay dormant for more than two years does not appear.[1] From statements in this record, in pleadings and otherwise, we gather that an "order to show cause" was directed to the receiver about October 7, 1925, to which he filed an answer verified on October 28, 1925. Neither such order nor the answer appears in this record.

On November 27, 1925, the Brictson Manufacturing Company filed a motion to dismiss the application of the receiver to take testimony "which is based on his application verified by him on the 8th day of March, 1923, and his answer to the court's order to show cause herein is verified on the 28th day of October, 1925." The grounds of such motion were, as stated, "because the same [application and answer] do not contain facts sufficient to entitle Ralph M. West as receiver

to any relief because of expenditures made by him as receiver. And also because the same do not contain any facts showing any expenditures made * * * were necessary to be made for the preservation of and for the benefit of the property held by him in receivership."

On December 7, 1925, the court entered an order setting for hearing, on December 21, 1925, the receiver's "reports," the order to show cause, and the answer thereto.

The record is barren as to what took place upon December 21, 1925, but upon the day following, December 22, 1925, the court entered an order denying the above motion of the company and directing the receiver "to make a report including in it in detail what property he received as such receiver, when such property was received and from whom received; also what expenditures the receiver has made for the preservation of the property received by him, what expenditures he has made for the benefit of such property, and any other expenditures; also what property the receiver has in his possession at the present time, showing same in detail. Such report to be filed on or before January 5, 1926."

Such order provided further that "parties hereto" might file exception to such report within fifteen days of its filing, and that "the receiver or any of the parties may call up the report and the exceptions for hearing upon notice as of date to be fixed by the court for such purpose."

On January 5, 1926, the receiver filed his report covering "his doings from the date of his appointment, September 6, 1921, up to and including January 5, 1926." In this report, the receiver set forth the property coming to and held by him, the receipts from business transacted by him, and his various expenditures and two incurred liabilities not then paid. He alleged that all of such expenditures were for the preservation and benefit of the property. Also he alleged his continued willingness to turn over the property, charged that such had been prevented solely by the company which refused "to come into this jurisdiction and accept its property," and therefore claimed compensation for so holding the property.

On January 19, 1926, the company filed extended exceptions to this report of the receiver.

Beginning with September 27, 1926, and "continuing up to the 4th day of November, 1926," there were hearings which resulted in an order of November 3, 1926.

---

[1] In his report filed January 5, 1926, the receiver alleges that the delay was caused by the "refusal of said company [Brictson Manufacturing Company] to come into this jurisdiction and accept its property."

On November 3, 1926, an order was entered. This order recited that "the cause having been submitted" upon various named pleadings, which included "the receiver's reports and the objection and exception thereto filed by the Brictson Manufacturing Company on January 19, 1926; the application of the receiver filed March 25, 1926, the answer of the receiver to the exceptions and objections of the Brictson Manufacturing Company, filed September 15, 1926, and also submitted upon the evidence offered at the hearing."

Besides requiring the receiver to make designated dispositions of the funds and property in his possession, the order was, as to the reports and expenditures of the receiver, as follows: "That the accounts and reports of the receiver filed November 21, 1922, and January 19, 1926, be approved; and the expenditures made are approved as necessary to be made for the preservation and benefit of the property in the hands of the receiver or of the property in South Dakota; that the receiver shall pay out of the funds in his hands the balance due to the First National Bank of Omaha as rental of a safety deposit box for the papers and effects of the Brictson Manufacturing Company and shall pay the sum of $2,378.75 to the Gordon Fireproof Warehouse & Van Company, as the amount of storage and drayage due to September 29, 1926; and shall pay to the Sovereign Camp Woodmen of the World the sum of $1,615.00 as rent for the receiver's offices until October 1, 1926; and shall pay to Gregerson Brothers, the sum of $1,043.00, as the balance due for services rendered to the receiver."

The order recited further that:

"If an appeal shall be taken by any of the parties then the receiver shall make none of the payments nor surrender any of the property without a further order of this court. The receiver is authorized, pending the performance and execution of this decree, to continue to keep the goods stored at the present place and rate of storage and to maintain the office now held at the present rate of rental, and to continue to rent a safety deposit box at present rate of rental.

"The receiver is directed to file a further report showing compliance with this order and decree, and to execute this decree with all convenient speed, in the manner stated herein. The right to require a full compliance with the terms of this decree is reserved and jurisdiction is retained for that purpose, with the right to the receiver or any proper party to apply to the court for such relief as shall be necessary in carrying out the terms of this decree; jurisdiction is also reserved as to the taxation of costs, to be exercised upon the application of any parties interested."

There were appeals from this order by the company which were determined in this court by an opinion filed April 2, 1928. 25 F.(2d) 794. A portion of that opinion (page 806) quoted and adopted the opinion of Judge Munger as to the allowances to the receiver of certain expenditures as being for the preservation and benefit of the property, and the order was affirmed. Thereafter the company applied to the Supreme Court for a writ of certiorari (278 U. S. 666, 49 S. Ct. 249, 73 L. Ed. 571), which was denied, and the mandate of this court issued February 25, 1929.

The subsequent order of the court (here appealed from) shows the filing of a receiver's report on April 15, 1929, and of objections thereto, but neither appears in this record.

The next thing appearing in this record is the order now appealed from. This order was entered on June 24, 1929, and is as follows:

"This cause having come on further for hearing upon the receiver's report filed April 15, 1929, and the objections thereto, It Is Ordered that the receiver shall within ten days from this date, pay into the registry of this court the $9,516.16, being the principal of the amount found due to the Brictson Manufacturing Company as heretofore found due to said company in the decree of this court filed herein November 3, 1926, with interest at seven per cent per annum of $5,872.23 from September 6, 1921, until said amount is paid into this registry of this court, and with interest on $3,643.93 at the rate of seven per cent per annum from February 28, 1922, until said sum is paid into the registry of this court; it is further ordered the clerk of the court may retain from said sum $171.45 as his costs pursuant to order of Judge Booth filed July 22, 1927, and further ordered that the receiver be authorized to pay the premium on his bond as such receiver in the sum of $687.50 as shown by his report; it is further ordered that the receiver shall not pay nor allow the alleged claims of C. R. Squire, James Hobbs and Waldeman Klien set forth in the receiver's report; It is further ordered that the claim of the receiver for payment of his expenses and services and for his attorney's fees out of the moneys and property of the Brictson Manufacturing Company be disallowed; that the receiver be allowed the sum

of $1,000 for the full payment of his expenses, services and attorney's fees, but to be taxed as part of the costs against the plaintiffs in this case, no part of the said sum to be paid out of the funds under the receiver's control; it is further ordered that the Brictson Manufacturing Company do have and recover from the plaintiffs in this suit the sum of $8,295.81, being the sums of $4,098.21 heretofore ordered paid by the receiver to the Gordon Fireproof Warehouse and Storage Company, $2,969.54 heretofore ordered paid to the Sovereign Camp of the Woodmen of the World, $140.00 heretofore ordered paid to the First National Bank, $122.06, heretofore ordered paid to Gregerson Bros. in accordance with the order for and writ of mandamus heretofore issued by the United States Court of Appeals of the Eighth Circuit, dated February 8, 1923, in the case of Brictson Manufacturing Company, a corporation, plaintiff, v. J. W. Woodrough, respondent; it is further ordered and decreed that after making the payments out of the funds in his hands, as herein ordered, and as ordered by a prior order of this court dated April 17, 1929, the receiver shall deliver to the trustees of the Brictson Manufacturing Company, duly appointed by the district court of Douglas county, Nebraska, John F. Moriarity, John T. Marcell and Harry S. Byrne, all of the remainder of the monies, funds, credits and properties, real [person] or mixed, and all assets of every character of the Brictson Manufacturing Company, upon the execution and delivery to the receiver by said trustees of a proper receipt for the same; it is further ordered that the receiver make a final report of his acts as such receiver, and shall file in this court with such report the receipts of the parties to whom the payments or deliveries shall have been made."

This record contains a later order (November 27, 1929), made after the present appeal was perfected, approving the final report of the receiver and discharging him. The materiality of the inclusion in this record of this order is not clear.

The main attacks upon the order of June 24, 1929, are that no application for taxation of costs was made and appellants had no notice of nor were present at the hearing which resulted in this order. It is true that the record does not show such application, notice, or presence.

As to lack of application for taxation of costs. The only light in the record as to whether there was or was not such application is the recital in the order that "this cause having come on further for hearing upon the receiver's report filed April 15, 1929, and the objections thereto. * * *" The matters here objected to in the order are not, accurately and technically speaking, "costs." They are expenses of the receivership. A receivership case necessitates the ordinary court costs of any litigation and, in addition the expenses arising from administration of the property by a receiver which are of a character rarely or never appearing in other classes of litigation. This receivership proceeding was no exception. Herein the "costs" are, so far as we are advised, not yet determined and assessed. But, as to the expenses, this court early determined their disposition, leaving only the matter of amount open. In the above quotation from the writ of mandamus (February 8, 1923), it is shown that allowance for services to the receiver and expenditures necessary to be made or liabilities incurred by the receiver for the preservation of and for the benefit of the property, were to be allowed against the petitioners or recovered by the company "against the petitioners in the cause." Such order was made and is fully justified by Burnrite Coal Briquette Co. v. Riggs, 274 U. S. 208, 214, 47 S. Ct. 578, 580, 71 L. Ed. 1002, where the court said: "It is settled that where a receiver is appointed in a stockholders' suit by a federal court having jurisdiction, and the appointment is held on review to have been wrongly made, the court may, in the exercise of its judicial discretion, require that the receivers' charges be paid either by the corporation or by the unsuccessful plaintiff. See Palmer v. Texas, 212 U. S. 118, 132, 29 S. Ct. 230, 53 L. Ed. 435; Lion Bonding & Surety Co. v. Karatz, 262 U. S. 640, 642, 43 S. Ct. 641, 67 L. Ed. 1151. Compare Atlantic Trust Co. v. Chapman, 208 U. S. 360, 28 S. Ct. 406, 52 L. Ed. 528 [13 Ann. Cas. 1155]."

This record affirmatively shows the application of the receiver to have his expenditures and incurred liabilities allowed and adjudged to be for the preservation and benefit of the property and to have allowance made for his services.

As to notice or presence: As said above, the record shows neither. However, it does not show the contrary, either expressly or by proper inference. It is merely silent. Also the certificate to the transcript does not show that this record contains all that took place in connection with the order or the hearing upon which it was made. That certificate shows simply that the transcript here "is a true and faithful transcript of the pleadings

and proceedings on file and of record in said Court, as mentioned in said præcipe and as indicated in the foregoing index." The only thing called for in the præcipe which relates immediately to this order and the proceedings thereon is the order itself. The recitation in the order is: "This cause having come on further for hearing upon the receiver's report," etc. There is no recitation as to any appearances by any parties. The situation is that the order of the court recites a "hearing"; the record here is barren of what preceded and led up to that hearing or what occurred thereat; no such matters were called for by the præcipe of appellants, and the certificate of the clerk to the transcript carefully refrains from stating that the record here contains all that took place as to such matters. We have no right or power to supply such omission and to hold this order unwarranted because of what took place or failed to take place at that hearing, when we have information, in this record, that there was a hearing, but absolutely no further word of information as to such hearing. This situation is not new to this court, and the duty of this court has been more than once declared. In Rector v. United States, 20 F.(2d) 845, at page 859, this court said:

"Appellant contends these orders were not binding because they were made ex parte without notice or her knowledge. This contention is met by the state of the record here which does not show what took place. It was within the power of appellant to make this record unmistakable on this matter. As the record is here, there is no showing one way or the other. Therefore, we must presume that the court proceeded regularly (City and County of Denver v. Stenger, 295 F. 809, 814, this court) and that any notice required by equity practice was given or that, if the order was ex parte, appellant was given the notice required by equity rule IV and that appellant failed seasonably to move to reconsider, set aside or modify such orders.

"The burden is upon appellant to produce a record here which will show prejudice of her rights in the trial court (Bankers' Trust Co. v. M., K. & T. Ry. Co., 251 F. 789, 798, this court) and she has failed in that respect as to this contention. Our conclusion is that these orders were within the jurisdiction of the court; that we must at least under this record hold them to have been properly made; and that they are binding upon all parties affected thereby (including appellant), subject to any right of appeal appellant may have."

In Pulaski-Lonoke Drainage District et al. v. Missouri Pacific Railroad Company (C. C. A.) 44 F.(2d) 899, in an opinion by Judge Van Valkenburgh, a somewhat similar situation, respecting the presence of evidence in the court below, was presented, and the court at page 901 said:

"The question presented by these assignments revolves itself into the propriety of the court's action in finding that there had been no change in plans since the judgment of November 21, 1921, and, therefore, that appellee's plea of res adjudicata must be sustained. No evidence is contained in the record brought. Appellant, in brief, asserts that none was taken. Appellee insists that the record sustains the finding and judgment of the trial court. We are remitted to the rule that it is the duty of the appellant to see that the evidence, if any, is in the record, or by appropriate action to show that no evidence was offered or received. An appellate court will ordinarily not reverse a judgment simply because the record fails to show that testimony was offered or evidence taken. Barcklow v. Hutchinson, 32 N. J. Law, 195.

"In general, evidence will be presumed to have been adduced to support the court's finding or judgment. 4 Corp. Jur. 55, § 1644.

"It must be conceded that the findings of the court, if legitimately made, support the judgment entered. The only reasons for believing that no evidence was heard are the silence of the record, that the judgment entry does not state that testimony was introduced; that there is no showing of a waiver of the jury, and the statement made in appellant's brief, to which there was no categorical denial.

"But when the record is silent it will be presumed that evidence was adduced, the burden devolving upon appellant to see that his record affirmatively supports his contentions, and 'it is the general and well-settled rule that parties are presumed to have waived a jury, even in the absence of written stipulation, whenever it appears that they were present at the trial in person or by counsel and made no demand for a jury.' Edwards v. La Dow (C. C. A. 6) 230 F. 378, 380, 382. And where an issue of fact might be made for a jury, a defendant waives his right in this respect by allowing the court to try the matter without objection. Parkerson v. Borst (C. C. A. 5) 251 F. 242. These pronouncements are supported by a great many authoritative decisions. See, further, Kearney v. Case, 12 Wall. 275, 284, 20 L. Ed. 395; Gilman et al. v. Telegraph Co., 91 U. S. 603, 604, 23 L. Ed.

405; United States v. Harris, 106 U. S. 629, 635, 1 S. Ct. 601, 27 L. Ed. 290; Perego v. Dodge, 163 U. S. 160, 166, 16 S. Ct. 971, 41 L. Ed. 113; Rogers v. Life Ins. Co., 111 Ind. 343, 12 N. E. 495, 497, 60 Am. Rep. 701; International Development Co. v. Sanger, 75 Wash. 546, 135 P. 28, 29; Wolfman v. Corey, 258 Mass. 611, 155 N. E. 635.

"The judgment of the court recites that 'on this day comes on to be heard the matter of fixing or increasing the assessment of benefits in the Pulaski-Lonoke Drainage District against the property of the defendant Missouri Pacific Railroad Company, and the plaintiff being present and represented by its attorney Grover Garner, and the defendant being present and represented by its attorney H. G. Combs, and the court after being well and sufficiently advised in the premises doth find,' etc. In the face of this solemn utterance with its attendant presumption of verity, can it be assumed that the court made its important findings without evidentiary support? And can a judgment so rendered, after hearing, without protest or objection, and with presumed agreement, be overturned on appeal upon the bare statement in appellant's brief that no evidence was heard? We think not."

These contentions must, upon this record, be determined against appellants.

 Another contention is that the record affirmatively shows that portions of the sums charged against appellants were for expenditures incurred after the appellants' complaint had been dismissed and the defendant company given the right to receive back the property from the receiver, and that there is no showing in the record that the failure of the defendant company to secure the return of the property from the receiver was in any way chargeable to the appellants or that the company itself was not directly responsible therefor.

Appellants, and they alone, caused this property to be taken from its owners and put into the hands of a receiver. That act was wrongful and was harmful to the owners. The wrongful custody so brought about necessitated expenditures and incurring of liabilities by the receiver to preserve the property. This court determined that such expenditures and liabilities should be ultimately borne by these appellants who had caused such invasion of the rights of the owners. This record and the records of other appeals of this litigation in this court show that, when this property might have been returned, the trial court, "suspended" distribution of the property until it could determine intervening petitions (which it permitted to be filed) which asserted claims against that property, that afterwards other claimants for the property appeared, and that it was not until the order now appealed from was entered that a final determination was made as to whom the property should be handed over. Doubtless, this chain of events was never anticipated by appellants, but, obviously it could never have resulted in a prolonged custody by the receiver and the resultant expenses incurred by him for its protection had appellants not caused that custody. It may be that much of this expense resulted from the action of the court in not promptly and properly complying with the mandate of this court on the first appeal, but the appellants who created this situation, and not the company, which constantly has objected and opposed such in every way it could, must bear the burden of the mistakes of the court in a wrongful proceeding which they set in motion. If there were circumstances which might have shown that some part of this expense was caused by the company or by others than appellants in a way that it would have been inequitable for appellants to be charged therewith, the burden was upon them to make that showing and secure that relief. The only suggestion of such showing is in allegations of the receiver in his reports and in fragmentary extracts from the testimony before the court on its order of November 3, 1926. The record shows notice to attorneys for appellants of that hearing and the actual presence of one of such counsel, although he stated "we are not before the court in any manner or means." Appellants seem to have preferred to remain out of participation in the litigation. This was their privilege, but it has its consequences. They knew they were liable to be charged with these expenses because this court had so declared they would be. That liability did not cease when the order of dismissal was entered, because the custody of the receiver was not and could not be terminated thereby. He yet had an actual custody under the protection of the court in that proceeding. To protect their rights in this regard, they were bound to follow the proceedings to their conclusion. They have failed to make a showing what, if any, part of these expenses were caused by the company.

 Another contention is that an item of $1,043 paid Gregerson Brothers should not have been charged against appellants. The reason asserted is that this record shows that this sum was a contingent fee paid for recov-

ery of an overpayment of income tax. The record bears out the assertion of fact. Such a claim (refund of overpayment of tax) is different in its character from protection of physical property in custody of the receiver. While it is, in a sense, in protection of the property and certainly is for the benefit of the property yet it is unique in character and is more in the nature of an addition to the property. It seems inequitable to permit the property to profit by this refund and not pay the expense of securing it, and no claim is made that the expense was unreasonable in fact or amount. We think this item should, because of its peculiar character and for that reason alone, be eliminated as a charge against appellants. But this item is not shown to be any part of the sum now charged against appellants. In so far as the situation can be gathered from this record, the contrary is true. The record shows (report of receiver made January 5, 1926) payments by the receiver to Gregerson Brothers of nineteen items totalling $2,703.86. The record shows also various services, such as moving, auditing, and making tax return, which are unrelated to the tax refund services. The record shows also an order (November 3, 1926) for the receiver to pay to Gregerson Brothers "the sum of $1,043.00, as the balance due for services rendered to the receiver." The recitation in the present order is "$122.06, heretofore ordered paid to Gregerson Brothers." The above constitute the only light in this record as to what the $122.06 was for. It seems more probable that it was for services entirely separate from the tax refund, but, at any rate, there is complete lack of showing that it is a part of the fee of $1,043 paid on account of tax refund. Therefore this contention must be found against appellants.

■ Another contention is that the order appealed from reveals, on its face, a mistake in amount, which mistake can and should be rectified by this court. This part of the order is as follows: "It is further ordered that the Brictson Manufacturing Company do have and recover from the plaintiffs in this suit the sum of $8,295.81, being the sums of $4,098.21 heretofore ordered paid by the receiver to the Gordon Fireproof Warehouse and Storage Company, $2,969.54 heretofore ordered paid to the Sovereign Camp of the Woodmen of the World, $140.00 heretofore ordered paid to the First National Bank, $122.06, heretofore ordered paid to Gregerson Bros. in accordance with the order for and writ of mandamus heretofore issued by the United States

Court of Appeals of the Eighth Circuit, dated February 8, 1923, in the case of Brictson Manufacturing Company, a corporation, plaintiff, v. J. W. Woodrough, respondent."

■ This quotation shows clearly an ambiguity, as it reveals that the court intended to permit recovery for the total of four items which it separately designates by creditor and amount. Whether this ambiguity arose merely through mistake in addition or from inadvertent misstatement of the amount of one or more of the items, the record gives no hint. However, the source of this mistake can be readily discovered by the trial court and rectified by him, since the order shows that each of the items had been theretofore allowed and ordered paid. As the truth is in the record of the trial court and is not here, the proper procedure is to remand the case upon this sole matter for such correction as may comport with the truth as so shown and with this opinion, and that will be done. Errors in computation may be corrected. Woodruff & Co. v. United States (C. C.) 154 F. 861. If, as we think must be the situation, the record reveals without question where the error lies, the court may make this correction with or without notice to the parties as the justice of the case may require. Odell v. Reynolds, 70 F. 656, 661 (C. C. A. 6).

### Conclusion.

The case will be remanded for the sole purpose of the above correction, and the order, when and as thus corrected, will stand as affirmed.