**COLORADO WOOL MARKETING ASS'N**
**v. MONAGHAN et al.**
**No. 826.**

Circuit Court of Appeals, Tenth Circuit.
July 26, 1933.

Rehearing Denied Sept. 1, 1933.

Forrest C. Northcutt, of Denver, Colo. (Jesse G. Northcutt, of Denver, Colo., on the brief), for appellant.

Langdon H. Larwill, of Denver, Colo. (Daniel H. Thomas and H. P. Thomas, both of Salt Lake City, Utah, and Malcolm Lindsey, of Denver, Colo., on the brief), for appellees.

Before PHILLIPS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

McDERMOTT, Circuit Judge.

Appellant loaned $3,190.00 to a receiver of a band of sheep, which was all expended in feeding and caring for them pending the litigation. The trial court disallowed $1,754.57 entirely, and postponed $1,435.43 to the mortgage lien of the appellee, The Wasatch Livestock Loan Company, which will hereafter be referred to as appellee. Since the sheep sold for less than the mortgage, appellant was denied any real relief. A statement of the facts and a consideration of one or two well settled principles of law will disclose that appellant's position is impregnable.

The plaintiffs in the receivership suit claimed an interest in a band of sheep upon which appellee held a mortgage. Asserting that those in possession of the sheep were driving them out of the state to avoid an accounting and the jurisdiction of the court, this suit for such accounting and incidental relief was commenced in the state court on November 25, 1931. The appellee here, together with others claiming an interest in the sheep, were made parties defendant. The complaint alleges that it is necessary to obtain feed and supplies to preserve the sheep during the approaching winter, and that the appointment of a receiver is necessary for that purpose. Notice that the application for the appointment of a receiver would be called for hearing on December 1 was served personally on the defendants within the jurisdiction of the court, and a copy mailed to appellee at its office in Salt Lake City.

Upon the date set, none of the defendants appearing, the following order was entered:

"It is Further Ordered that, in order to prevent the removal of said sheep from the State of Colorado, and to preserve said sheep and to protect the interests of all persons concerned, that a Receiver should be appointed to take possession of said sheep and have custody and control thereof until further order of the court.

"It is Further Ordered and Adjudged that Paul Jensen, of Meeker, Colorado, be and he is hereby appointed Receiver and Custodian of said sheep specifically described in the complaint and is authorized and empowered to take possession of said sheep and run and manage the same and to incur such necessary expense as may be required, not exceeding the

sum of $5,000.00, until further order of the court.

"It is Further Ordered that said receiver· be and he is hereby authorized to issue Receiver's Certificates for expenses and in order to obtain money to defray expenses, and that the same shall constitute a lien upon said sheep, and said receiver is further authorized to make proper arrangements with any person claiming liens upon said sheep, and others, to secure advances from the 1932 wool crop for running expenses.

"It is Further Ordered that any one or more of the defendants not personally served with notice of this application may, upon reasonable notice to the plaintiffs, apply to the court to discharge said receiver for any valid and proper grounds and shall be entitled to be heard for such purpose."

On December 18 the receiver qualified; he found the sheep in the desert country, 55 miles from Meeker; it was 30 degrees below zero; there was 18 inches of snow on the ground; there was no feed for the sheep, and many of them were broken-mouthed ewes or· gummers; the herders were without supplies and had not been paid. Money must be raised or the sheep in the custody of the court would perish. The receiver pledged his personal credit to buy feed and supplies and pay the herders.

Appellee did not move for the discharge of the receiver, as invited by the order of appointment; instead on January 2, 1932, it removed the case to the Federal Court. It did not move to discharge the receiver in that court, but on the contrary filed an answer in which it specifically admitted the allegation of the complaint "that it is necessary to obtain food supplies to winter and care for said sheep, and also admits that a competent receiver should be appointed therefor." In its cross bill, appellee alleged that the sheep are "of highly perishable and delicate nature and requires the constant care, attention and management of skilled and expert persons familiar with the custom and usages attendant upon the care and handling of such livestock, and requires and will continue to require large sums of money from month to month in the care, handling and feeding thereof, and is in the possession of the plaintiffs all of whom are wholly without funds and unable to properly care for or manage the said property or to supply or obtain such funds and said property is not attended by sufficient or competent and skilled herders or other persons skilled and competent in the handling thereof and is not properly being cared for or herded or managed, but on account of the incompetent manner in which it is handled, and of the present winter season, is rapidly becoming impoverished and declining in value, and will continue to become impoverished and decline in value and a great portion or all thereof may become unable to subsist throughout the said winter season and may die, and this defendant's security thereby lost, unless sufficient funds for the proper care and management thereof are supplied and a competent and skilled person in that behalf appointed receiver thereof, and unless such receiver be appointed, this defendant will suffer great irreparable loss and injury for which it has no speedy or adequate remedy at law. That this defendant is ready, willing and able at all times to do and perform equity herein."

The Federal court took no affirmative action upon this application of appellee for a receiver; all parties were apparently satisfied with the conduct of the receiver appointed by the state court, for no effort was made to disturb his possession or powers, except as hereafter noticed; on the contrary, all parties recognized and dealt with him, and repeated orders of court were entered upon stipulation of appellee permitting the receiver to expend the moneys, here sought to be recovered, for the preservation of the sheep.

In the meantime the state court, on January 11, entered an order authorizing the receiver to borrow money from appellant. The state court had lost jurisdiction by the removal, and this order was a nullity; it was however superfluous, for the order of appointment made when the state court had jurisdiction, authorized the receiver to borrow money to preserve the sheep.

On January 14, 1932, the receiver arranged with appellant to borrow $3,190.00 to pay bills accrued for caring for the sheep and to provide funds for future care, and gave his receiver's note, secured by a lien on the 1932 wool clip, therefor. A draft for the proceeds came to the receiver on January 20, was deposited to his credit in a bank, and· checks for $1,754.57 given and honored before service of an order issued on January 22, at the request of appellee, restraining him from borrowing money. Upon notice of the order, payment of the draft was stopped by appellant; upon advice that the bank had given credit and honored checks on the faith of the integrity of its draft, appellant lifted the stop order and the draft cleared. Appellee makes much of appellant's honoring its draft after notice of the restraining order; but the bank had acquired the draft prior to

the issuance of the order, had given credit therefor and actually paid out a large part thereof. Appellant was well advised in honoring its draft since it had passed into the hands of a bona fide purchaser for value, at least to the extent of the moneys paid out. The balance of the $3,190.00 was paid out under orders of the court, agreed to by appellee, modifying the restraining order. The restraining order thus passes out of the case, since it was not issued until part had been paid out and was expressly released as to the balance.

The sheep were later sold for less than appellee's mortgage. The question presented is therefore a simple one: Should a receiver's necessary outlay for the preservation of perishable property, made under order of a court of competent jurisdiction, be paid ahead of a mortgage on the property preserved?

■ Upon removal from the state court, the order appointing the receiver, and the powers conferred thereby, remained in full force and effect until dissolved or modified by the Federal court. 28 USCA §§ 79, 81; Duncan v. Gegan, 101 U. S. 810, 25 L. Ed. 875; Foster's Fed. Pr. (6th Ed.) p. 3070. Upon removal, the receiver automatically became the receiver of the Federal court. Moreover in this case he was recognized as such throughout the litigation.

■ The first duty of a court having possession of property is to preserve it for the litigants. The courts, state and federal, which had possession of these sheep, would have been grossly derelict in their duty if either had permitted the sheep to starve or to stray beyond recall. Jerome v. McCarter, 94 U. S. 734, 738, 24 L. Ed. 136; Union Trust Co. v. Illinois Midland Co., 117 U. S. 434, 454, 6 S. Ct. 809, 29 L. Ed. 963; Illinois Steel Co. v. Ramsey (C. C. A. 8) 176 F. 853, 864. In Wallace v. Loomis, 97 U. S. 146, 162, 24 L. Ed. 895, the court, speaking of the authority conferred upon receivers to borrow money to preserve property in their possession, said: "It is a part of that jurisdiction, always exercised by the court, by which it is its duty to protect and preserve the trust funds in its hands." Necessary expenses incurred in the preservation of property while in the custody of the court should be paid before the court passes over the property or its proceeds to those adjudged to be entitled thereto. Feldman v. American Palestine Line, Inc. (D. C.) 15 F.(2d) 94, opinion by Judge Thacher, lately Solicitor General; Brictson Mfg. Co. v. Close (C. C. A. 8) 25 F.(2d) 794; Von Boston v. United Rys. Co. of St. Louis (C. C. A. 8) 8 F.(2d) 826, certiorari denied 271 U. S. 665, 46 S. Ct. 475, 70 L. Ed. 1140; Union Trust & Savings Bank v. Southern Traction Co. (C. C. A. 7) 283 F. 50, certiorari denied 260 U. S. 744, 43 S. Ct. 166, 67 L. Ed. 492; International Trust Co. v. United Coal Co., 27 Colo. 246, 60 P. 621, 83 Am. St. Rep. 59; Hanna v. State Trust Co. (C. C. A. 8) 70 F. 2, 30 L. R. A. 201; Clark on Receivers, §. 637.

The case of Hanna v. State Trust Company has been frequently followed in other circuits. There Judge Caldwell laid down the general rule that a court of equity may not, over the objection of lienholders, subordinate a lien to the expenses of operating a private business in receivership; but in so doing he stated that expenses of administration, realization and preservation are not within the rule, adopting for that purpose the following language of the court in Raht v. Attrill, 106 N. Y. 423, 13 N. E. 282, 285, 60 Am. Rep. 456:

"The act of the court in taking charge of property through a receiver is attended with certain necessary expenses of its care and custody; and it has become the settled rule that expenses of realization, and also certain expenses which are called expenses of preservation, may be incurred under the order of the court on the credit of the property; and it follows from necessity, in order to the effectual administration of the trust assumed by the court, that these expenses should be paid out of the income, or, when necessary, out of the corpus, of the property, before distribution, or before the court passes over the property to those adjudged to be entitled."

■ Nor is appellee in position to object to the payment of these expenses ahead of its lien. By its answer, it admitted the necessity of a receivership, and by its counterclaim it alleged the necessity of preserving the property and prayed that a receiver be appointed for that purpose. The moneys were expended in strict accord with the prayer of appellee. Expenditures incurred by a receiver with the express or implied consent of lienholders may be paid ahead of the liens. Kneeland v. American Loan Co., 136 U. S. 89, 10 S. Ct. 950, 34 L. Ed. 379; Union Trust Co. v. Souther, 107 U. S. 591, 2 S. Ct. 295, 27 L. Ed. 488; United States & Mexican Trust Co. v. Beaty (C. C. A. 8) 243 F. 544; Smith v. Shenandoah Valley Nat. Bank (C. C. A. 4) 246 F. 379. In Friedrichsen v. Guaranty Trust Co. of New York (C. C. A. 9) 39 F.(2d) 859, certiorari denied 282 U. S. 852, 51 S. Ct. 29, 75 L. Ed. 755, it was held that the priority of receiver's certificates issued to preserve the properties could not be questioned by a party who offered no other solution.

316

Appellee contends, and the trial court intimates, that the receivership was unnecessary and improvident; that while a receiver was unnecessary in December when the plaintiffs applied for one, that one was necessary in January when appellee applied for one. If so, the remedy was to oppose the appointment or promptly to move for his discharge; nothing prevented appellee from opposing his appointment, it having been notified of the application therefor; or from moving for his discharge in the state court; nor from promptly removing the case to the federal court and there seeking his discharge. It pursued none of these obvious and appropriate remedies; instead, it prayed for the appointment of a receiver for the particular purpose for which it now stipulates the money was expended. The record gives rise to a suspicion that appellee wants a disinterested receiver to pay for feeding its sheep through the winter. But even if the appointment by the state court or the continuation by the federal court was improvident, which we do not intimate, there is no question of jurisdiction, and no reason why the property should not be charged with the expense of preserving it. Burnrite Coal Briquette Co. v. Riggs, 274 U. S. 208, 47 S. Ct. 578, 71 L. Ed. 1002; Palmer v. Texas, 212 U. S. 118, 29 S. Ct. 230, 53 L. Ed. 435; Brictson Mfg. Co. v. Close (C. C. A. 8) 25 F.(2d) 794; Atlantic Trust v. Chapman, 208 U. S. 360, 28 S. Ct. 406, 52 L. Ed. 528, 13 Ann. Cas. 1155. The remedy for an improvident receivership is not to stand by until it is terminated and then to seek relief at the expense of an innocent third party which has advanced moneys to preserve the property in the custody of the court from destruction.

The decree appealed from is reversed, with directions to enter a decree adjudging appellant to have a first lien on the proceeds of the mortgage sale for $3,190.00 with 6 per cent. per annum from January 14, 1932, and attorneys fees as provided in the note given by the receiver.

Reversed with directions.