**In re AVORN DRESS CO., Inc. ***

No. 486.

Circuit Court of Appeals, Second Circuit.

July 8, 1935.

---

[1] Oral opinion not for publication.

*Opinion amplified on rehearing, see 79 F.(2d) 337

Isador Lublin, of New York City, for appellant.

Hahn, Abeson & Golin, of New York City (Julius J. Abeson, of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

On July 26, 1934, Avorn Dress Company, Inc., filed its voluntary petition under section 77B of the Bankruptcy Act (11 USCA § 207), and an order was entered approving the petition and allowing the debtor to remain in possession of its assets and to continue its business. Thereafter in October, 1934, the court directed that the debtor be liquidated and Charles G. Tierney be appointed trustee. During the time the debtor was continued in possession, it purchased goods to the amount of $1,390.29 from the appellant, Sheinman, on the security of accounts receivable assigned by the debtor without obtaining authority from the court. As the assigned accounts largely exceeded in value the price of the purchased goods, Sheinman on three occasions paid to the debtor in possession, at its request, sums of money aggregating $1,950, although the assigned accounts had not yet been collected. In each instance the debtor gave a receipt stating that in consideration of the sum received, it "hereby assigns its entire equity in all customers' accounts heretofore assigned to the said Harry L. Sheinman as security for the repayment" of the said sum. After the appellee was appointed trustee, he filed a petition to require Sheinman to account for the assigned accounts. By his answer Sheinman admitted that he had collected on the assigned accounts $2,390.24, and made claim that the trustee was answerable for "the aforedescribed purchases and advances in the sum of $3340.29." After hearings before the referee, an order was entered which gave Sheinman credit for the $1,950 paid to the debtor in possession and required him to turn over only $440.24, plus any sums collected on the assigned accounts after the filing of the trustee's petition. The referee's order also awarded Sheinman's claim of $1,390.29 for goods sold priority in payment over claims existing against the debtor when its petition under section 77B, 11 USCA § 207, was filed. Upon the trustee's petition for review, the District Court modified the referee's order by requiring Sheinman to turn over the full sum collected by him, namely, $2,390.24, and by annulling the priority awarded to his claim for goods sold, but without prejudice to his thereafter proving such claim against the debtor as he may be advised. From this order Sheinman has appealed.

It is conceded that the order of July 26th continuing the debtor in possession of its assets and business gave no authority to assign accounts receivable, and consequently that the assignments were invalid and the appellant must account for moneys collected thereon; but it is contended that in such accounting credit should be given for the $1,950 paid to the debtor in possession. The argument is that the invalid assignment of accounts as security for the goods sold imposed upon Sheinman an obligation to return any sums thereafter collected on the accounts and so the payments he made should be considered as though he were performing that obligation in advance of collection. But the written receipts given by the debtor preclude such an interpretation of the transactions. The equity in the accounts was assigned "as security for the repayment" of the sum advanced. Thus it is apparent that after the purchased goods were paid for out of collections or otherwise, the parties intended the accounts to continue as security for repayment of the cash advances. If the collections should prove inadequate for such repayment, we cannot doubt that Sheinman was intended to have a right to call on the debtor to repay the amount advanced. The money, no less than the goods, was delivered on credit because of reliance upon the supposed security. The District Court was quite right in finding that the sums advanced were loans, and it is conceded that a claim for money loaned could not be used as an offset in the appellant's accounting.

The decree appealed from does not preclude Sheinman from hereafter making proof against the debtor's estate of a claim for money loaned, nor from asserting that it is entitled to priority in payment over claims existing at the date of the debtor's petition. That question has not been raised by the appellant and we need not consider it.

The appellant does complain, however, that his claim of $1,390.29 for merchandise was denied priority. The District Court considered that the appellant's right to priority was not properly presented by the pleadings and might better await a later determination because there are other cred-

itors in a similar position and the assets appear to be insufficient to satisfy all liabilities created by the debtor in possession. Whether or not the question of priority was properly raised by the answer, it was litigated before the referee and decided by him. Nothing but delay will result from failing to determine it now, and the right to priority can be decided without reference to what dividend the assets will permit to be paid to priority claimants.

It is rightly assumed by both parties that a debtor continued in possession by order of court holds a position analogous to that of a receiver in equity. Authority to bind the estate by purchases on credit must be found in the order of appointment or subsequent orders. Paragraph 6 of the order of July 26th reads as follows: "6. And the Debtor be and hereby until further order of this Court, is authorized to continue, manage and operate the business of the Debtor and receive and collect the revenue and income from said business until the further order of this Court, with full power and authority to carry on, manage and operate said business and property of the Debtor, with such power as this Court may, from time to time grant, to keep insurance in the business, to repair, to incur expenses in the management of same, to purchase and sell for cash or on credit such merchandise, equipment or the like as may be necessary or advisable in conducting and continuing the Debtor's business, all subject to any further orders of this Court * * *." It is argued by the trustee that this conferred on the debtor no power whatever to buy goods on credit without a further order of the court. We think this is too narrow an interpretation of the order in view of the words "to purchase and sell for cash or on credit" such merchandise as may be necessary or advisable in continuing the business. We read the words "for cash or on credit" as applying to purchases as well as sales. To say that the debtor must seek specific authority every time it bought or sold a trifling bill of goods would render a continuation of the business quite impracticable. No doubt any unusual contract would require express authorization, but normal purchases and sales would be permissible without a special

order. See Chicago Deposit Vault Co. v. McNulta, 153 U. S. 554, 561, 14 S. Ct. 915, 38 L. Ed. 819; Northern Pac. Ry. Co. v. Amer. Trading Co., 195 U. S. 439, 461, 25 S. Ct. 84, 49 L. Ed. 269; Cake v. Mohun, 164 U. S. 311, 316, 17 S. Ct. 100, 41 L. Ed. 447. Between July 26 and September 27, 1934, the debtor purchased from Sheinman 27 bills of goods, which altogether totaled only $1,390.29. Before the filing of its petition the debtor had been accustomed to deal with Sheinman on credit, and the only change in the character of their dealings after the order of July 26th was that he insisted upon security. Although the pledging of accounts was unauthorized, the purchase on credit of merchandise needed for continuing the debtor's business was sanctioned by the order. Hence the purchases should be treated as an expense of administration and paid in priority to debts existing prior to the filing of the debtor's petition. See Kennebec Box Co. v. O. S. Richards Corp., 5 F.(2d) 951, 952 (C. C. A. 2); Mercantile Trust Co. v. Farmers' Loan & Trust Co., 81 F. 254, 258 (C. C. A. 8); Colorado Wool Marketing Ass'n v. Monaghan, 66 F.(2d) 313, 315 (C. C. A. 10).

It is argued that section 77B (c) (3), 11 USCA § 207 (c) (3), indicates that a priority claim can be created only by a specific order. This subdivision reads: "The judge * * * (3) may, for cause shown, authorize the debtor or the trustee or trustees, if appointed, to issue certificates for cash, property, or other consideration approved by the judge for such lawful purposes, and upon such terms and conditions and with such security and such priority in payments over existing obligations, secured or unsecured, as may be lawful in the particular case." In our opinion this refers to borrowing money or purchasing property in transactions of an unusual character, rather than to normal routine purchases on credit in carrying on the business.

Accordingly the order should be modified to award the appellant's claim for merchandise in the sum of $1,390.29, priority over debts existing on July 26, 1934. In other respects it is affirmed.