**ELLER INDUSTRIES, INC., Plaintiff,**

v.

**INDIAN MOTORCYCLE MANUFAC-
TURING, INC., a New Mexico
corporation, Defendant.**

No. 95–Z–777.

United States District Court,
D. Colorado.

July 13, 1995.

James R. Ghiselli, Maureen C. Weston, Holme Roberts & Owen, LLC, Boulder, CO, for plaintiff.

John M. Tanner, Fairfield and Woods, P.C., Denver, CO, for Receiver, Sterling Consulting Corporation.

No appearance for defendant.

## ORDER STAYING ALL EQUITABLE ACTIONS AGAINST THE RECEIVERSHIP ESTATE

WEINSHIENK, District Judge.

This matter comes before the Court on the Joint Motion To Stay All Equitable Actions Against The Receivership Estate filed by plaintiff, Eller Industries, Inc., and the Receiver, Sterling Consulting Corporation. A Verification Of Memorandum Brief In Support Of Motion To Stay All Equitable Actions Against The Receivership Estate was also filed by the Receiver.

Having considered all the relevant law and the arguments presented at the hearing on July 7, 1995, the Court now makes the following Findings of Fact, Conclusions of Law, and Order.

*FINDINGS OF FACT*

This Receivership commenced on a temporary basis on April 10, 1995, and was made permanent by the Order Appointing Receiver dated April 19, 1995 (the "Receivership"). Prior to the establishment of this Receivership, on or about July 15, 1993, involuntary Chapter 7 bankruptcy petitions were filed in Massachusetts against two corporations: Indian Motorcycle Company, Inc. and Indian Motorcycle Apparel and Accessories Company, Inc. (the "Debtors").

On February 24, 1995, the Bankruptcy Trustee for the Debtors filed an adversary proceeding in the Massachusetts Bankruptcy Court against the Defendant in this case, Indian Motorcycle Manufacturing, Inc. ("IMMI"). In that action, the Trustee sought injunctive relief against IMMI for allegedly violating the bankruptcy automatic stay by soliciting investments using a trademark of the word "Indian" in script form, which the Trustee maintained was the exclusive property of the Debtors. The complaint sought the establishment of a constructive trust over the assets of IMMI, maintaining that those assets were acquired by wrongfully using the trademark "Indian" in script form.

On March 3, 1995, the Bankruptcy Court entered what it termed a "preliminary injunction" precluding IMMI from soliciting funds by using the script "Indian" trademark. On March 22, 1995, the Bankruptcy Court entered another injunction which enjoined IMMI "and other individuals legally identifiable" with IMMI from "transferring, assigning, conveying, hypothecating or encumbering, except in the ordinary course of business, any and all of IMMI's assets, including real estate, personalty, and all choses in action, in any way and to any person." (the "TRO"). No bond was required.

Shortly thereafter, this Receivership was established, and notice of the Receivership was provided to the Trustee and to the Massachusetts Bankruptcy Court. Pursuant to the Order of Receivership, the Receiver became the only officer and only director of IMMI.

On April 25, 1995, the Massachusetts Bankruptcy Court converted the TRO to a preliminary injunction, again without a bond requirement. The transcript of the April 25 hearing reveals that Mr. Block, president of the Receiver, was present at the hearing but was not allowed to appear on behalf of the Receiver for any purpose, however limited. Tr. p. 15. After acknowledging the Receivership Complaint and the Receivership Order, the Massachusetts Bankruptcy Court ruled as follows:

> There appears to be a substantial likelihood that if the Defendant and any party legally identifiable with the Defendant is not restrained from assigning, conveying, hypothecating or encumbering, except in the ordinary course of business, any and all of IMMI's assets, including real estate, personalty and choses in action the Plaintiffs will be irreparably injured by (i) denying them the opportunity to recover damages and/or the substantial sums of money (which may be traceable to other property) that IMMI received by and through its alleged wrongful use of the Plaintiffs' Trademark Assets; (ii) creating further confusion in the Market Place.

The Trustee has informed the Receiver that the Trustee maintains that this Preliminary Injunction is binding on the Receivership and essentially places the Receivership Assets in a "constructive trust" for the Trustee's benefit. On its face, the Preliminary Injunction states that it applies to the "officer" of IMMI, which is the Receiver.[1]

## CONCLUSIONS OF LAW

This Court has exclusive jurisdiction over the assets and administration of the Receivership imposed on IMMI.[2] Equitable

---

**1.** In entering the Preliminary Injunction, the Massachusetts Bankruptcy Court found, *inter alia,* (1) that there was a significant threat of irreparable harm to the Trustee; (2) that the equities favored granting such an injunction; and (3) that there was no adequate remedy at law available to the Trustee. There is no analysis in the Preliminary Injunction as to why the protections offered by this Court and the fiduciary duties owed by the Receiver to all claimants (including the Trustee, should the Trustee file a claim) are insufficient to protect the interests of the Trustee.

**2.** *Wabash R. Co. v. Adelbert College,* 208 U.S. 38, 53, 28 S.Ct. 182, 186–87, 52 L.Ed. 379 (1908)

(receivership court's possession of the property gives such court exclusive jurisdiction to hear and determine all questions affecting title, possession or control of the property); *Oppenheimer v. San Antonio Land & Irrigation Co.,* 246 F. 934, 935 (5th Cir.1917) (an effect of the receivership court's taking possession was a withdrawal of the property from the jurisdiction of all other courts); *American Brake Shoe & Foundry Co. v. Interborough R.T. Co.,* 10 F.Supp. 512, 519 (S.D.N.Y.1935), *aff'd* 76 F.2d 1002 (2d Cir.1935), *cert. denied,* 295 U.S. 760, 55 S.Ct. 923, 79 L.Ed. 1702 (1935) (appointing court has exclusive jurisdiction as to questions of possession, use and management of property which affect administration of the estate).

actions against the estate may be authorized only by this Court. 2 Ralph E. Clark, *A Treatise on the Law and Practice of Receivers* § 625.2 (3d ed.1959) (hereinafter "*Clark on Receivers*").[3] An equitable action against IMMI in another forum, by definition, seeks to control assets of the Receivership Estate and thereby conflicts with this Court's exclusive jurisdiction over Receivership Estate assets. Absent leave of this Court, all equitable actions against IMMI cannot be effective against this Court or the Receiver. *See 2 Clark on Receivers* § 610(b) (receivership court's possession and control of assets cannot be disturbed without leave of court and enforcement of a levy or execution of property would be contempt of court).

■ By ordering IMMI into receivership, all assets of the company were placed in the custody of the Court. *See Lankenau v. Coggeshall & Hicks,* 350 F.2d 61, 63 (2d Cir. 1965); *Application Of Northwestern Mut. Life Ins.,* 703 P.2d 1314, 1317 (Colo.App. 1985). This Court therefore has exclusive jurisdiction with respect to the administration, possession and control of IMMI assets, and this control cannot be disturbed without leave of this Court. 2 *Clark on Receivers* § 625.2.

■ The objective of this Receivership is to prevent fraud and material injury to assets of IMMI and to preserve them for all parties in interest. *See Order Appointing Receiver,* ¶ 2. *See also Zeligman v. Juergens,* 762 P.2d 783, 785 (Colo.App.1983); *Colorado Wool Marketing Ass'n v. Monaghan,* 66 F.2d 313, 315 (10th Cir.1933). Sterling, as Receiver, is a fiduciary of this Court and of all claimants or persons interested in the estate. *See Zeligman,* 762 P.2d at 785; *In re Ebel,* 144 B.R. 510, 516 (D.Colo.1992). The Receiver is charged with the duty of managing the estate and property entrusted to his care. It must collect and preserve corporate property from imminent danger of loss, waste or dissipation and administer the receivership, free from outside interference

with estate property. *See Savageau v. J. & R.A. Savageau, Inc.,* 285 P.2d 810, 813 (Colo. 1955); *Rushworth v. Smith,* 3 Colo.App. 562, 34 P. 482, 483 (1893).

■ The Massachusetts Bankruptcy Court's April 25, 1995, Preliminary Injunction enjoins:

> IMMI, its officer, agents, servants, employees, shareholders, attorneys, and all other individuals legally identifiable with IMMI . . . from transferring, assigning, conveying, hypothecating or encumbering . . . any and all of IMMI's assets, including real estate, personalty, and all choses in actions, in any way and to any person.

The Trustee has interpreted the Preliminary Injunction to bind the Receiver and, therefore, this Court (as the Receiver may only act pursuant to this Court's orders). This interpretation would interfere with this Court's exclusive jurisdiction to control IMMI assets and confer on the Trustee a priority and preference over other creditors. Such an outcome is contrary to the basis of receivership law which places the property of the receivership estate under the Court's control for the equal benefit of all creditors. *Application Of Northwestern Mut. Life Ins.,* 703 P.2d at 1317. Therefore, the Preliminary Injunction cannot bind this Court.

■ Federal Courts have the power, if necessary, to take control over an entity and impose a receivership free from interference in other court proceedings. *See S.E.C. v. Wencke,* 622 F.2d 1363, 1372 (9th Cir.1980). Upon imposition of a receivership, all property in the possession of the debtor passes into the custody of the receivership court, and becomes subject to its authority and control. In the exercise of its jurisdiction over the debtor's property, the court has power to issue injunctions and all other writs necessary to protect the estate from interference and to ensure its orderly administration. *Id.* at 1370–71.

**3.** *Clark on Receivers* has been cited with approval in numerous federal courts and by the Colorado Supreme Court. *See, e.g., Coit Independence Joint Venture v. FSLIC,* 489 U.S. 561, 576, 109 S.Ct. 1361, 1370, 103 L.Ed.2d 602 (1989); *Colorado Wool Marketing Ass'n v. Monaghan,* 66 F.2d 313, 315 (10th Cir.1933); *George N. Sparling Coal Co. v. Colorado Pulp & Paper Co.,* 88 Colo. 523, 299 P. 41, 42 (1931).

373

This Court has the power to enjoin particular actions or to issue a "blanket stay" order effective against all persons, including non-parties, of all proceedings against the receivership entity in order to prevent interference with administration of the receivership. *Id.* at 1368 (affirming the broad power of a federal district court to issue stays effective against all persons and non-parties, of all proceedings against the receivership entities where necessary to protect the federal receivership); *SEC v. United Financial Group,* 576 F.2d 217, 220 (9th Cir.1978) ("When the receivership court takes jurisdiction of the debtor's estate, it has power to issue orders barring actions which would interfere with its administration of that estate"); 2 *Clark on Receivers* § 625.2 ("appointing court frequently issues a blanket injunction against interference with the court's possession and control of the res"). The power of a federal court to enter such stays does not depend on specific congressional authorization. *Wencke,* 622 F.2d at 1371. Rather, this authority is based upon the inherent and broad equitable powers of federal courts to protect its jurisdiction over the property for which it has taken possession. *Diners Club, Inc. v. Bumb,* 421 F.2d 396, 398 (9th Cir.1970).

The need to stay equitable actions against a receivership was recognized in *National Bank of Augusta v. Richmond Factory,* 91 Ga. 284, 18 S.E. 160, 164 (1893) where the court stated:

> We are clear that, as a general, if not a universal rule, all creditors seeking to assert equitable remedies against assets of which the court has taken charge by a receiver should become parties by intervention or otherwise to the cause in which the receiver was appointed, and prosecute their remedies *in that cause alone.* Creditors who stand out may be allowed to prosecute their legal remedies against the assets, if they can make them available; but, if they have to invoke the exercise of equitable powers by the same court, their legal remedies are not available, and they are in no condition to proceed by separate and independent actions. (Emphasis added).

The purposes of this Receivership, to marshal and protect company assets for the benefit of all creditors, can only be achieved by a stay of foreign equitable actions, including the Massachusetts Adversarial Proceeding as it purports to apply to the Receivership. A stay of all pending and future equitable actions against IMMI is necessary to achieve the purposes of the Receivership and to prevent interference with the administration of the Receivership estate and hardship to other creditors. A stay of the Massachusetts Preliminary Injunction is not necessary because that order cannot affect the receivership estate. But a stay against all other foreign equitable actions is warranted to preserve this Court's jurisdiction and control of the Receivership.

ORDER

For the reasons set forth above, it is

ORDERED that the Joint Motion To Stay All Equitable Actions Against The Receivership Estate is granted. It is

FURTHER ORDERED that all actions which are equitable in nature or purport to seek equitable relief against the Receiver or the Receivership Estate, including without limitation any future actions taken against IMMI in the Massachusetts Bankruptcy Court Adversary Proceeding, are hereby stayed, as are any attempts to enforce equitable relief purportedly previously entered against the Receiver or the Receivership.